LAWYERS FOR CLEAN WATER, INC.
Daniel Cooper (Bar No. 153576)
    Email: daniel@lawyersforcleanwater.com
Caroline Koch (Bar No. 266068)
    Email: caroline@lawyersforcleanwater.com
1004-A O'Reilly Avenue
San Francisco, California 94129
Telephone: (415) 440-6520
Facsimile: (415) 440-4155

*Attorneys for Plaintiff*
ORANGE COUNTY COASTKEEPER

*Additional Plaintiff's Counsel Listed On Next Page*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORANGE COUNTY COASTKEEPER, a California non-profit corporation,<br><br>        Plaintiff,<br><br>  vs.<br><br>CR&R INC., a California corporation,<br><br>        Defendant. | Civil Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**<br><br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)** |

ORANGE COUNTY COASTKEEPER
Colin Kelly (Bar No. 266956)
          Email:  colin@coastkeeper.org
3151 Airway Avenue, Suite F-110
Costa Mesa, California 92626
Telephone:  (714) 850-1965
Facsimile:  (714) 850-1592

Orange County Coastkeeper ("Coastkeeper"), by and through its counsel, hereby alleges:

## I.      JURISDICTION AND VENUE

1.      This is a civil suit brought under the citizen suit enforcement provision of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA"). *See* 33 U.S.C. § 1365. This Court has subject matter jurisdiction over the parties and this action pursuant to 33 U.S.C. § 1365(a)(1) and 28 U.S.C. §§ 1331 and 2201 (an action for declaratory and injunctive relief arising under the Constitution and laws of the United States).

2.      On May 1, 2014, Coastkeeper issued a sixty (60) day notice of intent to sue letter ("Notice Letter") to CR&R Inc. ("CR&R") for its violations of the Clean Water Act and California's Permit for Discharges of Stormwater Associated with Industrial Activities. The Notice Letter was also sent to the registered agent for CR&R, as required by 40 C.F.R. § 135.2(a)(1). Finally, the Notice Letter was sent to the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region IX, the Executive Director of the State Water Resources Control Board ("State Board"), and the Executive Officer of the Regional Water Quality Control Board, Santa Ana Region ("Regional Board") as required by the CWA. 40 C.F.R. § 135.2(a)(1). The Notice Letter is attached hereto as Exhibit A and is incorporated herein by reference.

3.      More than sixty (60) days have passed since the Notice Letter was served on CR&R and the State and Federal agencies. Coastkeeper is informed and believes, and thereon alleges, that neither the EPA nor the State of California has commenced or is diligently prosecuting an action to redress the violations alleged in this Complaint. *See* 33 U.S.C. § 1365(b)(1)(B). This action is not barred by any prior administrative penalty under section 309(g) of the CWA. 33 U.S.C. § 1319(g).

4.      This Complaint seeks relief for CR&R's substantive and procedural violations of California's Permit for Discharges of Stormwater Associated with Industrial Activities (National Pollution Discharge Elimination System General Permit No.

CAS000001, State Water Resources Control Board Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ) (hereinafter "Storm Water Permit") resulting from their industrial operations at 11292 Western Avenue, Stanton, California 90680 ("Facility").

5.     Venue is proper in the Central District of California pursuant to section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the sources of the violations are located within this judicial district.

## II.     LEGAL BACKGROUND

### A.     The Clean Water Act

6.     The Clean Water Act requires point source discharges of pollutants to navigable waters be regulated by an NPDES permit. 33 U.S.C. § 1311(a); *see* 40 C.F.R. § 122.26(c)(1).

7.     Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States unless the discharge complies with various enumerated sections of the CWA. Among other things, section 301(a) prohibits discharges not authorized by, or in violation of, the terms of a National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to section 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342(b).

8.     The term "pollutant" includes "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." 33 U.S.C. § 1362(6); *see* 40 C.F.R. § 122.2.

9.     The "discharge of a pollutant" means, among other things, the addition of a pollutant to waterways of the United States from any "point source." *See* 40 C.F.R. § 122.2.

10.     The term "point source" means any "discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well,

1  discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel

2  or other floating craft, from which pollutants are or may be discharged," and includes

3  facilities discharging storm water associated with industrial activity. 33 U.S.C.

4  § 1362(14); *see* 40 C.F.R. § 122.2.

5      11.    "Waters of the United States" are defined as "navigable waters," and "all

6  waters which are currently used, were used in the past, or may be susceptible to use in

7  interstate or foreign commerce, including waters which are subject to the ebb and flow of

8  the tide." 33 U.S.C. § 1362(7).

9      12.    The EPA promulgated regulations defining "waters of the United States."

10  *See* 40 C.F.R. § 122.2. The EPA interprets waters of the United States to include not only

11  traditionally navigable waters but also other waters, including waters tributary to

12  navigable waters, wetlands adjacent to navigable waters, and other waters including

13  intermittent streams that could affect interstate commerce.

14      13.    The Clean Water Act confers jurisdiction over waters that are tributary to

15  traditionally navigable waters where the water at issue has a significant nexus to the

16  navigable water. *See Rapanos v. United States*, 547 U.S. 715 (2006); *see also N. Cal.*

17  *River Watch v. City of Healdsburg*, 496 F.3d 993 (9th Cir. 2007). A significant nexus is

18  established if the "[receiving waters], either alone or in combination with similarly

19  situated lands in the region, significantly affect the chemical, physical, and biological

20  integrity of other covered waters." *Rapanos*, 547 U.S. at 779; *N. Cal. River Watch*, 496

21  F.3d at 999-1000.

22      14.    A significant nexus is also established if waters that are tributary to

23  navigable waters have flood control properties, including functions such as the reduction

24  of flow, pollutant trapping, and nutrient recycling. *Rapanos*, 547 U.S. at 782; *N. Cal.*

25  *River Watch*, 496 F.3d at 1000-1001.

26      15.    Section 402(p) of the CWA, 33 U.S.C. § 1342(p), establishes a framework

27  for regulating industrial storm water discharges under the NPDES program.

28      16.    Section 402(b) of the CWA, 33 U.S.C. § 1342(b), allows each state to

---

Complaint                          5

administer its own EPA-approved NPDES permit program for regulating the discharge of pollutants, including discharges of polluted storm water.

17.     Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), provides for citizen enforcement actions against any "person" who is alleged to be in violation of an "effluent standard or limitation . . . or an order issued by the Administrator or a State with respect to such a standard or limitation." *See* 33 U.S.C. §§ 1365(a)(i) and 1365(f).

18.     CR&R Inc. is a "person" within the meaning of section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5).

19.     An action for injunctive relief is authorized under section 505(a) of the CWA, 33 U.S.C. § 1365(a).

20.     Each separate violation of the Clean Water Act subjects the violator to a penalty of up to $37,500 per day per violation for violations occurring on and after January 12, 2009. 33 U.S.C. §§ 1319(d) and 1365(a); Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4.

21.     Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), allows prevailing or substantially prevailing parties to recover litigation costs, including attorneys' fees, experts' fees, and consultants' fees.

### B.     California's Storm Water Permit

22.     In California, the State Water Resources Control Board ("State Board") is charged with regulating pollutants to protect California's water resources. *See* Cal. Water Code § 13001.

23.     The Storm Water Permit is a statewide general NPDES permit issued by the State Board pursuant to section 402 of the CWA. 33 U.S.C. § 1342(b); *see* 40 C.F.R § 123.25.

24.     In order to discharge storm water lawfully in California, industrial dischargers must secure coverage under the Storm Water Permit and comply with its terms, or obtain and comply with an individual NPDES permit. Storm Water Permit, Finding #2. Prior to beginning industrial operations, dischargers are required to apply for

coverage under the Storm Water Permit by submitting a Notice of Intent to Comply with the Terms of the General Permit to Discharge Storm Water Associated with Industrial Activity ("NOI") to the State Board. *See* Storm Water Permit, Finding #3.

25.    Violations of the Storm Water Permit are also violations of the CWA. *See* Storm Water Permit Section C(1) (Standard Provisions).

**C.    The Storm Water Permit's Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations**

26.    Except as allowed in Special Conditions Section D(1) of the Storm Water Permit, discharging materials other than storm water (non-storm water discharges) either directly or indirectly to waters of the United States is prohibited. *See* Storm Water Permit, Discharge Prohibition A(1). Prohibited non-storm water discharges must be either eliminated or permitted by a separate NPDES permit. *See id*.

27.    Effluent Limitation (B)(3) of the Storm Water Permit requires dischargers covered by the Storm Water Permit to reduce or prevent pollutants in storm water discharges through the implementation of Best Available Technology Economically Achievable ("BAT") for toxic or non-conventional pollutants, and Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants. Toxic pollutants are listed at 40 C.F.R. § 401.15 and include copper, lead, and zinc, among others. Conventional pollutants are listed at 40 C.F.R. § 401.16 and include biological oxygen demand ("BOD"), total suspended solids ("TSS"), oil and grease ("O & G"), pH, and fecal coliform.

28.    EPA's NPDES Storm Water Multi-Sector General Permit for Industrial Activities ("2008 MSGP Permit") includes numeric benchmarks for pollutant concentrations in storm water discharges ("EPA Benchmarks").

29.    The Benchmark Levels provide an objective standard to determine whether a facility's Best Management Practices ("BMPs") are successfully developed and/or implemented. *See* MSGP Fact Sheet, at 95 (2008), *available at* http://www.epa.gov/npdes/pubs/msgp2008_finalfs.pdf.

30.     Discharges from an industrial facility containing pollutant concentrations that exceed Benchmark Levels indicate that the facility has not developed and/or implemented BMPs that meet BAT for toxic pollutants and/or BCT for conventional pollutants. *Id.*

31.     Receiving Water Limitation C(1) of the Storm Water Permit prohibits storm water discharges from adversely impacting human health or the environment.

32.     Discharges with pollutant levels that exceed levels known to adversely impact aquatic species and the environment are violations of Receiving Water Limitation C(1) of the Storm Water Permit.

33.     Receiving Water Limitation C(2) of the Storm Water Permit prohibits storm water discharges that cause or contribute to an exceedance of any "applicable Water Quality Standard in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan."

34.     Water Quality Standards ("WQS") are pollutant concentration levels determined by the State Board, the various regional boards, and the EPA to be protective of the beneficial uses of the waters that receive polluted discharges.

35.     The Water Quality Control Plan for the Santa Ana River Basin (Basin Plan), California Regional Water Quality Control Board, Santa Ana Region, 3rd Ed., (Rev. June 2011) ("Basin Plan") identifies the "Beneficial Uses" of water bodies in the region. The existing and/or potential Beneficial Uses for Bolsa Chica Channel include, at a minimum: Warm Freshwater Habitat and Water Contact Recreation. *See* 2010 Integrated Report – All Assessed Waters, available at: http://www.waterboards.ca.gov/water_issues/programs/tmdl/2010state_ir_reports/02253. shtml#12579 (last accessed on July 16, 2014).

36.     The Basin Plan Beneficial Uses for Sunset Bay – Huntington Harbor, Anaheim Bay – Outer Bay, and Anaheim Bay – Seal Beach National Wildlife Refuge include: Navigation; Water Contact Recreation; Non-contact Water Recreation; Commercial and Sportfishing; Preservation of Biological Habitats of Special

1  Significance; Wildlife Habitat; Rare, Threatened, or Endangered Species; Spawning,

2  Reproduction and Development; Marine Habitat; and Estuarine Habitat. *See* Basin Plan at

3  Table 3-1.

4      37.  Surface waters that cannot support the Beneficial Uses of those waters listed

5  in the Basin Plan are designated as impaired water bodies pursuant to section 303(d) of

6  the Clean Water Act.

7      38.  According to the 2010 303(d) List of Impaired Water Bodies, Bolsa Chica

8  Channel is impaired for ammonia, pH, and indicator bacteria, among other pollutants. *See*

9  2010 Integrated Report – All Assessed Waters, available at:

10  http://www.waterboards.ca.gov/water_issues/programs/tmdl/2010state_ir_reports/02253.

11  shtml#12579 (last accessed on July 16, 2014).

12      39.  Sunset Bay – Huntington Harbor is impaired for copper, lead, sediment

13  toxicity, and pathogens, among other pollutants. 2010 Integrated Report – All Assessed

14  Waters, available at:

15  http://www.waterboards.ca.gov/water_issues/programs/tmdl/integrated2010.shtml, (last

16  accessed on July 16, 2014).

17      40.  Anaheim Bay – Outer Bay and Anaheim Bay – Seal Bach National Wildlife

18  Refuge are impaired for sediment toxicity, among other pollutants. *Id*.

19      41.  Discharges of pollutants at levels above WQS contribute to the impairment

20  of the Beneficial Uses of the waters receiving the discharges.

21      42.  WQS applicable to dischargers covered by the Storm Water Permit include,

22  but are not limited to, those set out in the Basin Plan and in the Criteria for Priority Toxic

23  Pollutants for the State of California ("CTR"), 40 C.F.R. § 131.38.

24      43.  The CTR includes numeric criteria set to protect human health and the

25  environment in the State of California. Water Quality Standards; Establishment of

26  Numeric Criteria for Priority Toxic Pollutants for the State of California Factsheet, EPA-

27  823-00-008 (April 2000), available at:

28  http://water.epa.gov/lawsregs/rulesregs/ctr/factsheet.cfm.

44.     Discharges with pollutant levels in excess of the CTR criteria, the Basin Plan standards, and/or other applicable WQS are violations of Receiving Water Limitation C(2) of the Storm Water Permit.

**D.     The Storm Water Permit's Storm Water Pollution Prevention Plan Requirements**

45.     Section A(1) and Provision E(2) of the Storm Water Permit require dischargers to develop and implement a Storm Water Pollution Prevention Plan ("SWPPP") that complies with the requirements of the Storm Water Permit prior to commencing industrial activities.

46.     The objectives of the SWPPP are to identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm water discharges, to identify and implement site-specific BMPs to prevent the exposure of pollutants to storm water, and to reduce or prevent the discharge of polluted storm water from industrial facilities. Storm Water Permit, Section A(2).

47.     Section A(4) of the Storm Water Permit requires that the SWPPP include a site map that contains: the facility boundaries, storm water drainage areas and directions of flow for each drainage area, on-site surface water bodies, nearby water bodies, areas of soil erosion, and municipal storm drain inlets where the facility's storm water discharges may be received (Section A(4)(a)); the location of the storm water collection, conveyance and discharge system and structural control measures that affect storm water discharges (Section A(4)(b)); an outline of all impervious areas of the facility, including paved areas, buildings, covered storage areas, or other roofed structures (Section (4)(c)); locations where materials are directly exposed to precipitation and where significant spills or leaks have occurred (Section A(4)(d)); and areas of industrial activity, including areas that are actual and potential pollutant sources (Section A(4)(e)).

48.     Section A(5) of the Storm Water Permit requires that the SWPPP include a list of significant materials handled and stored at the site.

49.     Section A(6)(a) of the Storm Water Permit requires that the SWPPP include

a narrative description of the facility's industrial activities, associated potential pollutant sources, and potential pollutants that could be discharged in storm water discharges.

50.     Section A(6)(b) of the Storm Water Permit requires that the SWPPP include a summary of all areas of industrial activities, potential pollutant sources, and potential pollutants.

51.     Section A(7)(a) of the Storm Water Permit requires that the SWPPP include a narrative assessment of all industrial activities and potential pollutant sources to determine which areas of the facility are likely sources of pollutants and which pollutants are likely to be present in the storm water discharges. Section A(7)(b) of the Storm Water Permit requires that the SWPPP include a summary of the areas of the facility that are likely sources of pollutants and the corresponding pollutants likely to be present in storm water discharges.

52.     Section A(8) of the Storm Water Permit requires that the SWPPP include a narrative description of the storm water BMPs to be implemented at the facility for each potential pollutant and its source. Dischargers must develop and implement structural and/or non-structural BMPs to reduce or prevent pollutants in storm water discharges. Storm Water Permit, Sections A(8)(a) and (b).

53.     Section A(9) of the Storm Water Permit requires the discharger to evaluate the SWPPP on an annual basis and revise it as necessary to ensure compliance with the Storm Water Permit. Sections A(9)(a)-(c) of the Storm Water Permit also require that the discharger conduct an annual comprehensive site compliance evaluation that includes a review of all visual observation records, inspection reports and sampling and analysis results, a visual inspection of all potential pollutant sources for evidence of, or the potential for, pollutants entering the drainage system, a review and evaluation of all BMPs to determine whether the BMPs are adequate, properly implemented and maintained, or whether additional BMPs are needed, and a visual inspection of equipment needed to implement the SWPPP. Section A(9)(d) of the Storm Water Permit requires that the discharger submit an evaluation report that includes an identification of personnel

performing the evaluation, the date(s) of the evaluation(s), necessary SWPPP revisions, a schedule for implementing SWPPP revisions, any incidents of non-compliance and the corrective actions taken, and a certification that the discharger is in compliance with the Storm Water Permit. Storm Water Permit, Section A(9)(d)(i)-(vi). If certification of compliance cannot be provided, the discharger must explain in the evaluation report why the facility is not in compliance with the Storm Water Permit. *Id.*, Section A(9)(d). The evaluation report shall be submitted as part of the Annual Report specified in Section B(14) of the Storm Water Permit. *Id*.

54.     Section A(10) of the Storm Water Permit requires that the discharger revise the SWPPP as necessary prior to changes in industrial activities, or as otherwise required by the Storm Water Permit.

### E.     The Storm Water Permit's Monitoring and Reporting Requirements

55.     Provision E(3) and Section B(1) of the Storm Water Permit require dischargers to develop and implement a Monitoring and Reporting Program ("M&RP") prior to commencing industrial activities.

56.     The objectives of the M&RP are to ensure that BMPs have been adequately developed and implemented, revised when necessary, and to ensure that storm water and non-storm water discharges are in compliance with the Storm Water Permit's Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations. Storm Water Permit, Sections B(2)(a) and B(2)(b).

57.     The M&RP aids in the implementation and revision of the SWPPP and measures the effectiveness of BMPs to prevent or reduce pollutants in storm water discharges. Storm Water Permit, Section B(2)(c) and B(2)(d).

58.     Section B(2)(d) requires that the M&RP "shall be revised" as necessary to ensure compliance with the Storm Water Permit.

59.     Section B(4)(a) of the Storm Water Permit requires dischargers to conduct monthly visual observations of storm water discharges during the first hour of discharge and at all discharge locations during the Wet Season (defined as October 1 – May 30).

60.     Section B(4)(c) of the Storm Water Permit requires dischargers to document the presence of any floating and suspended materials, oil and grease, discolorations, turbidity, or odor in the discharge, and the source of any pollutants in storm water discharges from the facility. This same section requires dischargers to maintain records of observations, observation dates, discharge locations observed, and responses taken to reduce or prevent pollutants from contacting storm water discharges. Section B(4)(c) of the Storm Water Permit also requires dischargers to revise the SWPPP as necessary to ensure that BMPs are effectively reducing and/or eliminating pollutants at the facility.

61.     Sections B(5) and B(7) of the Storm Water Permit require dischargers to visually observe and collect samples of storm water discharges from all locations where storm water is discharged.

62.     Section B(5)(a) of the Storm Water Permit requires dischargers to collect storm water samples during the first hour of discharge from the first storm event of the Wet Season and at least one other storm event in the Wet Season. All storm water discharge locations must be sampled. *See* Storm Water Permit, Section B(5)(a). Facility operators that do not collect samples from the first storm event of the Wet Season are still required to collect samples from two other storm events of the Wet Season and must explain in the Annual Report why the first storm event was not sampled. *See id*.

63.     Section B(5)(b) requires that sampling conducted pursuant to the Storm Water Permit occur during scheduled facility operating hours that are preceded by at least three (3) working days without storm water discharge.

64.     Section B(5)(c)(i) of the Storm Water Permit requires dischargers to analyze each sample for pH, specific conductance, TSS, and total organic carbon ("TOC"). A discharger may substitute analysis for oil and grease instead of TOC.

65.     Section B(5)(c)(ii) of the Storm Water Permit requires dischargers to analyze each sample for toxic chemicals and other pollutants likely to be present in significant quantities in the storm water discharged from the facility.

66.     Section B(5)(c)(iii) and Table D of the Storm Water Permit require facilities

classified as SIC codes 4953 and 5093, such as the CR&R Facility, to also analyze storm water samples for ammonia, magnesium, COD, arsenic, cadmium, cyanide, lead, mercury, selenium, silver, zinc, copper, aluminum, and iron, or as required by the Regional Board.

67.     Section B(14) of the Storm Water Permit requires that dischargers submit an Annual Report to the applicable Regional Board by July 1 of each year. The Annual Report must include a summary of visual observations and sampling results, an evaluation of the visual observations and sampling and analysis results, laboratory reports, the annual comprehensive site compliance evaluation report specified in Section A(9), an explanation of why a facility did not implement any activities required, and the records specified in Section B(13)(i).

## III.   PARTIES

### A.   Orange County Coastkeeper

68.     Orange County Coastkeeper is a non-profit public benefit corporation organized under the laws of the State of California. Orange County Coastkeeper's office is located at 3151 Airway Avenue, Suite F-110, Costa Mesa, California 92626.

69.     Orange County Coastkeeper has over 2,000 members who live and/or recreate in and around the Anaheim Bay-Huntington Harbor watershed. Coastkeeper is dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of local surface waters. To further these goals, Coastkeeper actively seeks Federal and State agency implementation of the Clean Water Act, and, where necessary, directly initiates enforcement actions on behalf of itself and others.

70.     Coastkeeper members use and enjoy the Bolsa Chica Channel, Sunset Bay – Huntington Harbor, Anaheim Bay – Outer Bay, and Anaheim Bay – Seal Beach National Wildlife Refuge and their tributaries for fishing, boating, swimming, bird watching, picnicking, viewing wildlife, sailing, kayaking, hiking, and engaging in scientific study, including monitoring activities.

71.     Discharges of polluted storm water and non-storm water from the Facility

degrade water quality and harm aquatic life in the Bolsa Chica Channel, Sunset Bay – Huntington Harbor, Anaheim Bay – Outer Bay, and Anaheim Bay – Seal Beach National Wildlife Refuge and their tributaries, and impair Coastkeeper's members' use and enjoyment of those waters.

72.     The violations of the Storm Water Permit at the Facility are ongoing and continuous. Thus, the interests of Coastkeeper's members have been, are being, and will continue to be adversely affected by CR&R's failure to comply with the Storm Water Permit and the CWA.

**B.     The Facility Owners and/or Operators**

73.     Coastkeeper is informed and believes, and thereon alleges, that CR&R Inc. is an owner of the Facility.

74.     Coastkeeper is informed and believes, and thereon alleges, that CR&R Inc. is an operator of the Facility.

75.     Coastkeeper refers to CR&R Inc. as the "Facility Owner and/or Operator."

76.     Coastkeeper is informed and believes, and thereon alleges, that CR&R Inc. is an active corporation registered in California.

77.     Coastkeeper is informed and believes, and thereon alleges, that the name and address of the Registered Agent for CR&R Inc. is CT Corporation System, 818 West Seventh Street, Second Floor, Los Angeles, California 90017.

**IV.     FACTUAL BACKGROUND**

**A.     Facility Site Description**

78.     Coastkeeper is informed and believes, and thereon alleges, that the Facility is a waste management, recycling and portable-storage container (i.e., bins) site.

79.     Coastkeeper is informed and believes, and thereon alleges, that there are six (6) buildings at the Facility: (1) buyback recycling office, (2) vehicle maintenance shop, paint booth and corporate office, (3) fabrication shop, (4) auxiliary building, (5) curbside recycling processing, and (6) steam cleaning bay and auxiliary building.

80.     Coastkeeper is informed and believes, and thereon alleges, that the Facility

also includes outdoor storage areas for curbside recycling materials, empty container bins, and equipment and truck parking.

81.     Coastkeeper is informed and believes, and thereon alleges, that the outdoor curbside recycling material area is located in the northwest corner of the Facility adjacent to the curbside recycling processing building.

82.     Coastkeeper is informed and believes, and thereon alleges, that the outdoor empty container storage area is located in the western most part of the Facility that abuts railroad tracks.

83.     Coastkeeper is informed and believes, and thereon alleges, that the buy-back recycling center is outdoors.

84.     Coastkeeper is informed and believes, and thereon alleges, that the fueling pump island is outdoors.

85.     Coastkeeper is informed and believes, and thereon alleges, that the SWPPP site map identifies each of the above-described areas as part of the Facility, but the narrative portions of the SWPPP fail to provide additional details about the specific location or the acreages of these areas, or how, if any, the industrial processes within these areas at the Facility are conducted.

86.     The Facility is bordered by Western Avenue at the corner of Western Avenue and Lincoln Way in Stanton, California.

87.     Coastkeeper is informed and believes, and thereon alleges, that the Facility is also bordered by Orangewood Avenue at Western Avenue in Stanton, California.

88.     The points of egress/ingress to the Facility include four (4) driveways leading to Western Avenue.

89.     Coastkeeper is informed and believes, and thereon alleges, that Driveway 1 is located at the northern most corner of the Facility.

90.      Coastkeeper is informed and believes, and thereon alleges, that Driveway 1 is adjacent to a truck parking area and a truck scale area.

91.     Coastkeeper is informed and believes, and thereon alleges, that Driveway 2

is the next most northern entrance/egress for the Facility.

92. Coastkeeper is informed and believes, and thereon alleges, that an additional trucks parking area is adjacent to Driveway 2.

93. Coastkeeper is informed and believes, and thereon alleges, that the outdoor buy-back recycling center is located between Driveway 1 and Driveway 2.

94. Coastkeeper is informed and believes, and thereon alleges, that Driveway 3 is located in the center of the Facility.

95. Coastkeeper is informed and believes, and thereon alleges, that Driveway 3 is adjacent to the Facility corporate office, vehicle maintenance shop, and fuel pump island.

96. Coastkeeper is informed and believes, and thereon alleges, that Driveway 4 is the southern most entrance/egress for the Facility.

97. Coastkeeper is informed and believes, and thereon alleges, that Driveway 4 is adjacent to additional parking areas as well as a fabrication shop.

**B.    The Facility's Storm Water Permit Coverage**

98. The Facility Owner and/or Operator submitted an NOI for the Facility, which was approved by the Regional Board on March 6, 1992.

99. The NOI indicated that the Facility is approximately five (5) acres.

100. Coastkeeper is informed and believes, and thereon alleges, that the NOI sought Permit coverage for five (5) acres.

101. The current Facility SWPPP indicates that the Facility is ten (10) acres.

102. Coastkeeper is informed and believes, and thereon alleges, that the Facility includes areas of industrial activity not described in the NOI or the SWPPP.

103. Coastkeeper is informed and believes, and thereon alleges, that the Facility is at least ten (10) acres.

104. The NOI lists the Waste Discharge Identification ("WDID") number for the Facility as 8-30I000311.

105. The NOI lists the Standard Industrial Classification ("SIC") code for the

Facility as 5093 (Scrap Recycling).

106.   The Facility SWPPP lists SIC code 4953 (Hazardous Waste Treatment Storage or Disposal) as an additional applicable SIC code.

107.   Coastkeeper is informed and believes, and thereon alleges, that SIC code 4212 also applies to the Facility.

108.   A facility classified as SIC code 4953 requires Storm Water Permit coverage for the entire facility. Storm Water Permit, Attachment 1, Section 4.

109.   For facilities classified as SIC code 4212, the Storm Water Permit requires permit coverage for the portions of the facility involved in vehicle maintenance (including repair, rehabilitation, lubrication, painting and fueling) and other operations associated with industrial activity. Storm Water Permit, Attachment 1, Section 8.

110.   Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator conducts regulated industrial activities throughout the Facility, including, but not limited to, on the outdoor empty container storage area located in the western most part of the Facility that abuts railroad tracks.

111.   Coastkeeper is informed and believes, and thereon alleges, that to the extent industrial activities relating to SIC codes 4212 and/or 4953 are not conducted at locations throughout the entire Facility, the entire Facility requires Storm Water Permit coverage because there are no BMPs at the Facility that separate the storm water flows from portions of the Facility where non-regulated activities may occur from storm water flows from the regulated industrial activities.

112.   Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator has failed to include all areas where regulated industrial activities occur in its Storm Water Permit coverage, as the NOI sought coverage for only five (5) acres while the SWPPP describes the Facility as consisting of ten (10) acres and information available to Coastkeeper indicates that the CR&R Facility Owner and/or Operator conducts industrial activities in areas of the Facility not described in the NOI or SWPPP.

113.   Coastkeeper is informed and believes, and thereon alleges, that by failing to either include all regulated industrial activities in the Facility's existing Storm Water Permit coverage, or to obtain independent NPDES permit coverage, there are unpermitted point source discharges from the Facility to the waters of the United States.

### C.   CR&R's SWPPP and MR&P

114.   In a March 3, 2014, letter to the Facility Owner and/or Operator the Regional Board requested a copy of the current Facility SWPPP and M&RP.

115.   On or about March 21, 2014, the Regional Board provided Coastkeeper a SWPPP and MR&P for the CR&R Facility dated June 2012, and certified on March 7, 2014.

116.   Coastkeeper is informed and believes, and thereon alleges, that the SWPPP and M&RP Coastkeeper received on or about March 21, 2014 is the current SWPPP and MR&P for the Facility.

### D.   Industrial Activities, Pollutant Sources, Pollutants, and BMPs at the Facility

117.   Coastkeeper is informed and believes, and thereon alleges, that the Facility's industrial activities and areas of industrial activity are pollutant sources.

118.   Coastkeeper is informed and believes, and thereon alleges, that the Facility's industrial activities and areas include, but are not limited to: processing, loading, and unloading of solid waste and recyclable materials such as hazardous materials; metal crushing; storage of solid waste materials including, but not limited to, household hazardous material and electronic waste; bin storage, cleaning, and maintenance; vehicle and equipment cleaning operations; vehicle and equipment refueling; vehicle and equipment maintenance; vehicle and equipment painting; storage of materials associated with equipment and vehicle maintenance; and storage of vehicles and equipment.

119.   Coastkeeper is informed and believes, and thereon alleges, that industrial activities occur throughout the Facility outdoors without adequate cover to prevent storm water and non-storm water exposure to pollutant sources.

120.   Coastkeeper is informed and believes, and thereon alleges, that industrial activities occur throughout the Facility outdoors without secondary containment or other adequate treatment measures to prevent polluted storm water and non-storm water from discharging from the Facility.

121.   Section 1.5 of the SWPPP provides a "description and assessment of potential pollutant sources" at the Facility.

122.   Coastkeeper is informed and believes, and thereon alleges, that the SWPPP does not describe all industrial activities and potential pollutant sources, as, for example, the SWPPP fails to identify and/or describe empty container storage, metal crushing, or waste and recyclable material sorting.

123.   Section 1.4 of the SWPPP states that significant materials used and stored at the site consist of small quantities of new and used waste fluids, including motor oils, antifreeze, hydraulic fluids, transmission fluids, gear lube, and axel grease.

124.   Coastkeeper is informed and believes, and thereon alleges, that the SWPPP fails to identify all significant materials used and stored at the Facility as there are many other significant materials handled at the CR&R Facility not identified in the SWPPP, including municipal solid waste and recyclables.

125.   Coastkeeper is informed and believes, and thereon alleges, that because all significant materials have not been identified the SWPPP fails to describe the location where significant materials are stored, received, shipped, and handled.

126.   Coastkeeper is informed and believes, and thereon alleges, that pollutants associated with the Facility include, but are not limited to: O&G; heavy metals (such as copper, iron, lead, aluminum, mercury, silver, and zinc); TSS, nutrients, pathogens, and trash; ammonia; magnesium; arsenic; cadmium; cyanide; selenium; motor oils, aromatic hydrocarbons, chlorinated hydrocarbons, antifreeze, hydraulic fluids, brake fluids, transmission fluids, gear lube, and axel grease; fugitive dust, dirt and debris; and pH-affecting substances.

127.   Coastkeeper is informed and believes, and thereon alleges, that the SWPPP

1  fails to describe the potential pollutants that are associated with the Facility's industrial
2  activities.

3      128.   Coastkeeper is informed and believes, and thereon alleges, that the SWPPP
4  fails to include a summary of all areas of industrial activities, potential pollutant sources,
5  and potential pollutants in table resembling Table B of the Storm Water Permit.

6      129.   Section 1.7 of the SWPPP identifies the Facility BMPs.

7      130.   Coastkeeper is informed and believes, and thereon alleges, that without
8  properly identifying all industrial activities the CR&R Facility Owner and/or Operator
9  has not developed all appropriate BMPs.

10      131.   Coastkeeper is informed and believes, and thereon alleges, that without
11  properly identifying all industrial activities the CR&R Facility Owner and/or Operator
12  has not implemented all appropriate BMPs.

13      132.   Coastkeeper is informed and believes, and thereon alleges, that without
14  properly identifying all significant materials at the Facility in the SWPPP, the CR&R
15  Facility Owner and/or Operator has not developed all appropriate BMPs.

16      133.   Coastkeeper is informed and believes, and thereon alleges, that without
17  properly identifying all significant materials at the Facility in the SWPPP, the CR&R
18  Facility Owner and/or Operator has not implemented all appropriate BMPs.

19      134.   Coastkeeper is informed and believes, and thereon alleges, that the Facility
20  Owner and/or Operators has failed and continues to fail to assess potential pollutant
21  sources at the Facility.

22      135.   Coastkeeper is informed and believes, and thereon alleges, that the SWPPP
23  includes no assessment of potential pollutant sources at the Facility.

24      136.   Coastkeeper is informed and believes, and thereon alleges, that the Facility
25  Owner and/or Operators has failed and continues to fail to assess pollutants associated
26  with potential pollutant sources at the Facility.

27      137.   Coastkeeper is informed and believes, and thereon alleges, that the SWPPP
28  includes no assessment of pollutants associated with potential pollutant sources at the

1   Facility.

2       138.   Coastkeeper is informed and believes, and thereon alleges, that the Facility

3   Owner and/or Operators has failed and continues to fail to assess the Facility's BMPs

4   corresponding to potential pollutant sources and associated pollutants.

5       139.   Coastkeeper is informed and believes, and thereon alleges, that the SWPPP

6   includes no assessment of the Facility's BMPs corresponding to potential pollutant

7   sources and associated pollutants.

8       140.   Coastkeeper is informed and believes, and thereon alleges, that the SWPPP

9   includes no adequate description of the Facility BMPs.

10      141.   Coastkeeper is informed and believes, and thereon alleges, that the Facility

11   Owner and/or Operators has failed and continues to fail to analyze the effectiveness of

12   the BMPs at the Facility.

13      142.   Coastkeeper is informed and believes, and thereon alleges, that the SWPPP

14   includes no adequate analysis of the effectiveness of the BMPs at the Facility.

15      143.   Coastkeeper is informed and believes, and thereon alleges, that the SWPPP

16   includes no adequate summary of the BMPs by pollutant source.

17      144.   The Facility SWPPP refers to "Appendix B" as a source of additional

18   information about the Facility BMPs, but no such Appendix B was provided to

19   Coastkeeper when it obtained a copy of the current SWPPP from the Regional Board.

20      145.   Coastkeeper is informed and believes, and thereon alleges, that storm water

21   sampling at the Facility demonstrates that the Facility's storm water discharges contain

22   concentrations of pollutants above the EPA Benchmarks.

23      146.   Coastkeeper is informed and believes, and thereon alleges, that the repeated

24   and significant exceedances of EPA Benchmarks demonstrate that the CR&R Facility

25   Owner and/or Operator failed and continues to fail to develop BMPs to prevent the

26   exposure of pollutants to storm water and to prevent discharges of polluted storm water

27   and non-storm water from the Facility.

28      147.   Coastkeeper is informed and believes, and thereon alleges, that the repeated

and significant exceedances of EPA Benchmarks demonstrate that the CR&R Facility Owner and/or Operator failed and continues to fail to implement BMPs to prevent the exposure of pollutants to storm water and to prevent discharges of polluted storm water and non-storm water from the Facility.

**E.    Discharge Locations and Storm Water Conveyance System at the Facility**

148.    The CR&R Facility Owner and/or Operator reports that there are four (4) discharge points at the Facility, which are identified in the SWPPP as Sample Point #1 (SP1), Sample Point #2 (SP2), Sample Point #3 (SP3), and Sample Point #4 (SP4).

149.    The SWPPP indicates that SP1 is located to the east of the scale house that is located on the south side of the Facility.

150.    The SWPPP indicates that SP2 is located to the east of the parking lot that is located near the fueling station.

151.    The SWPPP indicates that SP3 is located to the east of the scale house that is located on the south side of the facility.

152.    The SWPPP indicates that SP4 is located to the south of the property near the fabrication shop.

153.    The SWPPP also indicates that surface drainage at the Facility flows from east to west, collecting at several storm drain inlets leading to these discharge points.

154.    The SWPPP site map does not indicate the specific locations of SP1 through SP4.

155.    The SWPPP site map does not show the direction of drainage at the site.

156.    The SWPPP site map does not identify the number or locations of the storm drain inlets.

157.    The SWPPP site map does not identify the location of the storm water conveyance system.

158.    Coastkeeper is informed and believes, and thereon alleges, that the pollutants associated with the Facility have been and continue to be tracked throughout

1   the Facility resulting in trucks and vehicles tracking trash, recyclables, sediment, dirt, oil
2   and grease, metal particles, and other pollutants off-site via the Driveways 1-4.

3      159.   Coastkeeper is informed and believes, and thereon alleges, that the Regional
4   Board's September 28, 2009, denial of the CR&R Facility Owner's and/or Operator's
5   request to terminate Permit coverage indicates that Driveways 1-4 are additional
6   discharge points at the Facility.

7      160.   Coastkeeper is informed and believes, and thereon alleges, that Driveways
8   1-4 are additional discharge points at the Facility.

9      161.   Coastkeeper is informed and believes, and thereon alleges, that Driveways
10  1-4 are not identified in the SWPPP or the M&RP as discharge points at the Facility.

11     162.   The Facility SWPPP site map indicates that the storm water conveyance
12  system includes seven (7) clarifiers.

13     163.   Coastkeeper is informed and believes, and thereon alleges, that Clarifier #1
14  is located adjacent to Driveway 1, a truck scale area, a truck parking area, and the
15  outdoor buy-back recycling center.

16     164.   Coastkeeper is informed and believes, and thereon alleges, that Clarifier #2
17  is adjacent to Driveway 2, an additional truck parking area, and the outdoor buy-back
18  recycling center.

19     165.   Coastkeeper is informed and believes, and thereon alleges, that Clarifier #3
20  and Clarifier #5 are adjacent to Driveway 3, the corporate office, the vehicle maintenance
21  shop, and the fuel pump island.

22     166.   Coastkeeper is informed and believes, and thereon alleges, that Clarifier #4
23  is adjacent to Driveway 4, parking areas including truck parking, and the fabrication
24  shop.

25     167.   Coastkeeper is informed and believes, and thereon alleges, that Clarifier #6
26  is adjacent to the steam cleaning bay and auxiliary building.

27     168.   Coastkeeper is informed and believes, and thereon alleges, that Clarifier #7
28  is adjacent to a container cleaning area and the paint booth.

169. Clarifiers #1 and #2 collect storm water associated with the Facility recycling material processing area.

170. Clarifier #4 collects storm water associated with the Facility vehicle maintenance shop.

171. The SWPPP does not describe which discharge point is associated with which clarifier or industrial activity.

## F. The Facility's Discharges to the Receiving Waters

172. Coastkeeper is informed and believes, and thereon alleges, that pollutants from the Facility discharge from the Facility discharge points to the City of Stanton municipal storm drain system that leads to the Stanton Storm Channel.

173. The Stanton Storm Channel is tributary to the Bolsa Chica Channel.

174. The Bolsa Chica Channel is tributary to: (1) Sunset Bay – Huntington Harbor, (2) Anaheim Bay – Outer Bay, and (3) Anaheim Bay – Seal Beach National Wildlife Refuge.

175. The Bolsa Chica Channel, Sunset Bay – Huntington Harbor, Anaheim Bay – Outer Bay, and Anaheim Bay – Seal Beach National Wildlife Refuge are referred to collectively herein as the "Receiving Waters."

176. Coastkeeper is informed and believes, and thereon alleges, that the Receiving Waters are traditionally navigable waters of the United States.

177. Coastkeeper is informed and believes, and thereon alleges, that polluted storm water and non-storm water discharges from the Facility to the Receiving Waters.

178. Coastkeeper is informed and believes, and thereon alleges, that the NOI erroneously identifies the "Stanton Storm Channel" as the name of the water receiving discharges from the Facility.

179. Coastkeeper is informed and believes, and thereon alleges, that the SWPPP erroneously identifies the water receiving discharges from the Facility as "the Long Beach Outer Harbor (via the San Gabriel River)."

///

1  **G.    CR&R's Prohibited Non-Storm Water Discharges**

2     180.    Coastkeeper is informed and believes, and thereon alleges, that trash

3  discharges from the Facility.

4     181.    Coastkeeper is informed and believes, and thereon alleges, that non-storm

5  water discharges from the Facility to the Receiving Waters when CR&R fails to prevent

6  trash from discharging from the Facility.

7     182.    Coastkeeper is informed and believes, and thereon alleges, that CR&R uses

8  water to control dust at the Facility.

9     183.    Coastkeeper is informed and believes, and thereon alleges, that non-storm

10  water discharges from the Facility to the Receiving Waters when CR&R fails to prevent

11  water used for dust control from discharging from the Facility.

12     184.    Coastkeeper is informed and believes, and thereon alleges, that CR&R uses

13  water for washing and cleaning activities at the Facility.

14     185.    Coastkeeper is informed and believes, and thereon alleges, that non-storm

15  water discharges from the Facility to the Receiving Waters when CR&R fails to prevent

16  wash water from discharging from the Facility.

17     186.    Coastkeeper is informed and believes, and thereon alleges, that the SWPPP

18  includes no description of dust and particulate pollutants generated by the Facility's

19  industrial activities.

20     187.    Coastkeeper is informed and believes, and thereon alleges, that the SWPPP

21  includes no assessment of dust and particulate pollutants generated by the Facility's

22  industrial activities.

23     188.    Coastkeeper is informed and believes, and thereon alleges, that the SWPPP

24  includes no description of the Facility's non-storm water discharges.

25     189.    Coastkeeper is informed and believes, and thereon alleges, that the SWPPP

26  includes no assessment of the Facility's non-storm water discharges.

27     190.    Coastkeeper is informed and believes, and thereon alleges, that the SWPPP

28  includes no description of the Facility's areas of soil erosion.

Complaint                          26

191.   Coastkeeper is informed and believes, and thereon alleges, that the SWPPP includes no assessment of the Facility's areas of soil erosion.

192.   Coastkeeper is informed and believes, and thereon alleges, that the CR&R Facility Owner and/or Operator conducts activities that result in prohibited non-storm water discharges without BMPs to prevent related non-storm water discharges.

**H.   CR&R's Sampling, Reporting, and Monitoring**

193.   Via a Public Records Act request to the Regional Board, Coastkeeper obtained an Annual Report for the Facility dated June 29, 2009.

194.   Coastkeeper is informed and believes, and thereon alleges, that the Annual Report dated June 29, 2009, is the 2008-2009 Annual Report for the Facility.

195.   Via a Public Records Act request to the Regional Board, Coastkeeper obtained an Annual Report for the Facility dated June 25, 2010.

196.   Coastkeeper is informed and believes, and thereon alleges, that the Annual Report dated June 25, 2010, is the 2009-2010 Annual Report for the Facility.

197.   Via a Public Records Act request to the Regional Board, Coastkeeper obtained an Annual Report for the Facility dated June 30, 2011.

198.   Coastkeeper is informed and believes, and thereon alleges, that the Annual Report dated June 30, 2011, is the 2010-2011 Annual Report for the Facility.

199.   Via a Public Records Act request to the Regional Board, Coastkeeper obtained an Annual Report for the Facility dated June 21, 2012.

200.   Coastkeeper is informed and believes, and thereon alleges, that the Annual Report dated June 21, 2012, is the 2011-2012 Annual Report for the Facility.

201.   Via a Public Records Act request to the Regional Board, Coastkeeper obtained an Annual Report for the Facility dated June 26, 2013.

202.   Coastkeeper is informed and believes, and thereon alleges, that the Annual Report dated June 26, 2013, is the 2012-2013 Annual Report for the Facility.

203.   Coastkeeper refers to the above-described documents collectively as CR&R's "Annual Reports."

204.   Coastkeeper is informed and believes, and thereon alleges, that since at least May 19, 2009, the Facility Owner and/or Operator failed to conduct non-storm water visual observations at each of its discharge points. *See* Annual Reports.

205.   Coastkeeper is informed and believes, and thereon alleges, that since at least May 19, 2009, the Facility Owner and/or Operator failed to conduct storm water visual observations at each of its discharge points. *See* Annual Reports.

206.   Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include a summary of non-storm water visual observations for each of its discharge points in the 2008-2009 Annual Report.

207.   Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include an evaluation of non-storm water visual observations for each of its discharge points in the 2008-2009 Annual Report.

208.   Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include a summary of storm water visual observations for each of its discharge points in the 2008-2009 Annual Report.

209.   Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include an evaluation of storm water visual observations for each of its discharge points in the 2008-2009 Annual Report.

210.   Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include a summary of non-storm water visual observations for each of its discharge points in the 2009-2010 Annual Report.

211.   Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include an evaluation of non-storm water visual observations for each of its discharge points in the 2009-2010 Annual Report.

212.   Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include a summary of storm water visual observations of each of its discharge points in the 2009-2010 Annual Report.

213.   Coastkeeper is informed and believes, and thereon alleges, that the Facility

Owner and/or Operator failed to include an evaluation of storm water visual observations of each of its discharge points in the 2009-2010 Annual Report.

214.   Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include a summary of non-storm water visual observations for each of its discharge points in the 2010-2011 Annual Report.

215.   Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include an evaluation of non-storm water visual observations for each of its discharge points in the 2010-2011 Annual Report.

216.   Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include a summary of storm water visual observations for each of its discharge points in the 2010-2011 Annual Report.

217.   Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include an evaluation of storm water visual observations for each of its discharge points in the 2010-2011 Annual Report.

218.   Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include a summary of non-storm water visual observations for each of its discharge points in the 2011-2012 Annual Report.

219.   Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include an evaluation of non-storm water visual observations for each of its discharge points in the 2011-2012 Annual Report.

220.   Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include a summary of storm water visual observations for each of its discharge points in the 2011-2012 Annual Report.

221.   Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include an evaluation of storm water visual observations for each of its discharge points in the 2011-2012 Annual Report.

222.   Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include a summary of non-storm water visual

observations for each of its discharge points in the 2012-2013 Annual Report.

223.   Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include an evaluation of non-storm water visual observations for each of its discharge points in the 2012-2013 Annual Report.

224.   Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include a summary of storm water visual observations for each of its discharge points in the 2012-2013 Annual Report.

225.   Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include an evaluation of storm water visual observations for each of its discharge points in the 2012-2013 Annual Report.

226.   Coastkeeper is informed and believes, and thereon alleges, that since at least May 19, 2009, the Facility Owner and/or Operator failed to document the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at unobserved discharge points. *See* Annual Reports.

227.   Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include a summary of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at unobserved discharge points in the 2008-2009 Annual Report.

228.   Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include an evaluation of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at unobserved discharge points in the 2008-2009 Annual Report.

229.   Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include a summary of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at unobserved discharge points in the 2009-2010 Annual Report.

230.   Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include an evaluation of the presence of any floating and

suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at unobserved discharge points in the 2009-2010 Annual Report.

231. Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include a summary of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at unobserved discharge points in the 2010-2011 Annual Report.

232. Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include an evaluation of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at unobserved discharge points in the 2010-2011 Annual Report.

233. Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include a summary of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at unobserved discharge points in the 2011-2012 Annual Report.

234. Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include an evaluation of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at unobserved discharge points in the 2011-2012 Annual Report.

235. Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include a summary of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at unobserved discharge points in the 2012-2013 Annual Report.

236. Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include an evaluation of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at unobserved discharge points in the 2012-2013 Annual Report.

237. Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to indicate the location of non-storm water visual

observations to document which discharge point was observed in the 2008-2009 Annual Report.

238.    Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to indicate the location of non-storm water visual observations to document which discharge point was observed in the 2009-2010 Annual Report.

239.    Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to indicate the location of non-storm water visual observations to document which discharge point was observed in the 2010-2011 Annual Report.

240.    Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to indicate the location of non-storm water visual observations to document which discharge point was observed in the 2011-2012 Annual Report.

241.    Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to indicate the location of non-storm water visual observations to document which discharge point was observed in the 2012-2013 Annual Report.

242.    Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include the records required by Section B(4) of the Storm Water Permit for the monthly visual observations of storm water discharges in the 2008-2009 Annual Report.

243.    Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include the records required by Section B(4) of the Storm Water Permit for the monthly visual observations of storm water discharges in the 2009-2010 Annual Report.

244.    Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include the records required by Section B(4) of the

Storm Water Permit for the monthly visual observations of storm water discharges in the 2010-2011 Annual Report.

245.   Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include the records required by Section B(4) of the Storm Water Permit for the monthly visual observations of storm water discharges in the 2011-2012 Annual Report.

246.   Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include the records required by Section B(4) of the Storm Water Permit for the monthly visual observations of storm water discharges in the 2012-2013 Annual Report.

247.   Coastkeeper is informed and believes, and thereon alleges, that during at least the 2009-2010, 2010-2011, 2011-2012 Wet Seasons the Facility Owner and/or Operator collected only one storm water sample despite the occurrence of more than one qualifying rain event in those Wet Seasons.

248.   Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator reported only one storm water sample in its 20092-2010 Annual Report despite the occurrence of more than one qualifying rain event in that Wet Season.

249.   Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator reported only one storm water sample in its 2010-2011 Annual Report despite the occurrence of more than one qualifying rain event in that Wet Season.

250.   Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator reported only one storm water sample in its 2011-2012 Annual Report despite the occurrence of more than one qualifying rain event in that Wet Season.

251.   Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to collect any storm water samples during the 2012-2013 Wet Season despite the occurrence of at least two qualifying rain events in that Wet Season.

252.   Coastkeeper is informed and believes, and thereon alleges, that the Facility

Owner and/or Operator did not report any storm water samples in its 2012-2013 Annual Report despite the occurrence of at least two qualifying rain events in that Wet Season.

253. Coastkeeper is informed and believes, and thereon alleges, that since at least May 19, 2009, the Facility Owner and/or Operator failed to collect samples from all Facility discharge points. *See* Annual Reports.

254. Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include a summary of sampling results for all Facility discharge points in the 2008-2009 Annual Report.

255. Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include a summary of sampling results for all Facility discharge points in the 2009-2010 Annual Report.

256. Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include a summary of sampling results for all Facility discharge points in the 2010-2011 Annual Report.

257. Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include a summary of sampling results for all Facility discharge points in the 2011-2012 Annual Report.

258. Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include a summary of sampling results for all Facility discharge points in the 2012-2013 Annual Report.

259. Coastkeeper is informed and believes, and thereon alleges, that since at least May 19, 2009, the Facility Owner and/or Operator failed to analyze storm water samples for ammonia, magnesium, COD, arsenic, cadmium, cyanide, lead, mercury, selenium, silver, zinc, copper, aluminum, and iron, or other pollutants likely to be present in the Facility's storm water discharges in significant quantities.

260. Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include a summary of sampling results for ammonia, magnesium, COD, arsenic, cadmium, cyanide, lead, mercury, selenium, silver, zinc,

copper, aluminum, and iron, or other pollutants likely to be present in the Facility's storm water discharges in significant quantities for storm water samples in the 2008-2009 Annual Report.

261. Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include a summary of sampling results for ammonia, magnesium, COD, arsenic, cadmium, cyanide, lead, mercury, selenium, silver, zinc, copper, aluminum, and iron, or other pollutants likely to be present in the Facility's storm water discharges in significant quantities for storm water samples in the 2009-2010 Annual Report.

262. Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include a summary of sampling results for ammonia, magnesium, COD, arsenic, cadmium, cyanide, lead, mercury, selenium, silver, zinc, copper, aluminum, and iron, or other pollutants likely to be present in the Facility's storm water discharges in significant quantities for storm water samples in the 2010-2011 Annual Report.

263. Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include a summary of sampling results for ammonia, magnesium, COD, arsenic, cadmium, cyanide, lead, mercury, selenium, silver, zinc, copper, aluminum, and iron, or other pollutants likely to be present in the Facility's storm water discharges in significant quantities for storm water samples in the 2011-2012 Annual Report.

264. Coastkeeper is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include a summary of sampling results for ammonia, magnesium, COD, arsenic, cadmium, cyanide, lead, mercury, selenium, silver, zinc, copper, aluminum, and iron, or other pollutants likely to be present in the Facility's storm water discharges in significant quantities for storm water samples in the 2012-2013 Annual Report.

///

Complaint                                     35

# V.        CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

### CR&R's Discharges of Non-Storm Water in Violation of the Storm Water Permit's Discharge Prohibition A(1) and the Clean Water Act

### 33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)

265.   Coastkeeper incorporates the allegations contained in the above paragraphs as though fully set forth herein.

266.   Coastkeeper is informed and believes, and thereon alleges, that prohibited non-storm water discharges have discharged and continue to discharge from the Facility.

267.   Coastkeeper is informed and believes, and thereon alleges, that each and every time trash is not prevented from discharging from the Facility to the Receiving Waters is a violation of Discharge Prohibition A(1) of the Storm Water Permit.

268.   Coastkeeper is informed and believes, and thereon alleges, that each and every time water used for dust control is not prevented from discharging from the Facility to the Receiving Waters is a violation of Discharge Prohibition A(1) of the Storm Water Permit.

269.   Coastkeeper is informed and believes, and thereon alleges, that each and every time wash water is not prevented from discharging from the Facility to the Receiving Waters is a violation of Discharge Prohibition A(1) of the Storm Water Permit.

270.   Coastkeeper is informed and believes, and thereon alleges, that CR&R's violations of Discharge Prohibition A(1) are ongoing and continuous.

271.   Each and every violation of Discharge Prohibition A(1) of the Storm Water Permit is a separate and distinct violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a).

272.   By committing the acts and omissions alleged above, CR&R is subject to an assessment of civil penalties for each and every violation of the CWA occurring from May 19, 2009, to the present pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

273.   An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above will irreparably harm Coastkeeper and the citizens of the State of California, for which harm Coastkeeper has no plain, speedy, or adequate remedy at law.

WHEREFORE, Coastkeeper prays for judgment against CR&R as set forth below.

## SECOND CAUSE OF ACTION
### CR&R's Discharges of Contaminated Storm Water in Violation of Storm Water Permit Effluent Limitation B(3) and the Clean Water Act
### 33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)

274.   Coastkeeper incorporates the allegations contained in the above paragraphs as though fully set forth herein.

275.   Coastkeeper is informed and believes, and thereon alleges, that CR&R failed and continues to fail to reduce or prevent pollutants associated with industrial activities at the Facility through implementation of BAT/BCT from discharging from the Facility.

276.   Coastkeeper is informed and believes, and thereon alleges, that discharges of storm water containing levels of pollutants that do not achieve compliance with BAT/BCT standards from the Facility occur each time storm water discharges from the Facility.

277.   CR&R violates and will continue to violate Effluent Limitation B(3) of the Storm Water Permit each and every time storm water containing levels of pollutants that do not achieve BAT/BCT standards discharges from the Facility.

278.   Coastkeeper is informed and believes, and thereon alleges, that CR&R's violations of Effluent Limitation B(3) of the Storm Water Permit and the CWA are ongoing and continuous.

279.   Each and every time CR&R discharges contaminated storm water from the Facility in violation of Effluent Limitation B(3) of the Storm Water Permit is a separate and distinct violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a).

280.   By committing the acts and omissions alleged above, CR&R is subject to an

assessment of civil penalties for each and every violation of the CWA occurring from May 19, 2009, to the present pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

281.   An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above will irreparably harm Coastkeeper and the citizens of the State of California, for which harm Coastkeeper has no plain, speedy, or adequate remedy at law.

WHEREFORE, Coastkeeper prays for judgment against CR&R as set forth below.

## THIRD CAUSE OF ACTION

### CR&R's Discharges of Contaminated Storm Water in Violation of Storm Water Permit Receiving Water Limitation C(1) and the Clean Water Act

### 33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)

282.   Coastkeeper incorporates the allegations contained in the above paragraphs as though fully set forth herein.

283.   Coastkeeper is informed and believes, and thereon alleges, that discharges of storm water containing levels of pollutants that adversely impact human health and/or the environment from the Facility occur each time storm water discharges from the Facility.

284.   Coastkeeper is informed and believes, and thereon alleges, that storm water containing levels of pollutants that cause or contribute to exceedances of water quality standards has discharged and continues to discharge from the Facility each time storm water discharges from the Facility, and that these discharges adversely impact human health and/or the environment.

285.   CR&R violates and will continue to violate Receiving Water Limitation C(1) of the Storm Water Permit each and every time storm water containing levels of pollutants that adversely impact human health and/or the environment discharges from the Facility.

286.   Coastkeeper is informed and believes, and thereon alleges, that CR&R's violations of Receiving Water Limitation C(1) of the Storm Water Permit and the CWA

1  are ongoing and continuous.

2       287.   Each and every violation of Receiving Water Limitation C(1) of the Storm

3  Water Permit is a separate and distinct violation of section 301(a) of the CWA, 33 U.S.C.

4  § 1311(a).

5       288.   By committing the acts and omissions alleged above, CR&R is subject to an

6  assessment of civil penalties for each and every violation of the CWA occurring from

7  May 19, 2009, to the present pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C.

8  §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

9       289.   An action for injunctive relief under the CWA is authorized by 33 U.S.C.

10  § 1365(a). Continuing commission of the acts and omissions alleged above will

11  irreparably harm Coastkeeper and the citizens of the State of California, for which harm

12  Coastkeeper has no plain, speedy, or adequate remedy at law.

13       WHEREFORE, Coastkeeper prays for judgment against CR&R as set forth below.

14  ## FOURTH CAUSE OF ACTION

**CR&R's Discharges of Contaminated Storm Water in Violation of
Storm Water Permit Receiving Water Limitation C(2) and the Clean Water Act
33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

18       290.   Coastkeeper incorporates the allegations contained in the above paragraphs

19  as though fully set forth herein.

20       291.   Coastkeeper is informed and believes, and thereon alleges, that discharges of

21  storm water containing levels of pollutants that cause or contribute to exceedances of

22  water quality standards from the Facility occur each time storm water discharges from the

23  Facility.

24       292.   CR&R violates and will continue to violate Receiving Water Limitation

25  C(2) of the Storm Water Permit each and every time storm water containing levels of

26  pollutants that cause or contribute to exceedances of water quality standards discharges

27  from the Facility.

28       293.   Coastkeeper is informed and believes, and thereon alleges, that CR&R's

Complaint                                      39

violations of Receiving Water Limitation C(2) of the Storm Water Permit and the CWA are ongoing and continuous.

294.   Each and every violation of Receiving Water Limitation C(2) of the Storm Water Permit is a separate and distinct violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a).

295.   By committing the acts and omissions alleged above, CR&R is subject to an assessment of civil penalties for each and every violation of the CWA occurring from May 19, 2009, to the present pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

296.   An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above will irreparably harm Coastkeeper and the citizens of the State of California, for which harm Coastkeeper has no plain, speedy, or adequate remedy at law.

WHEREFORE, Coastkeeper prays for judgment against CR&R as set forth below.

## FIFTH CAUSE OF ACTION
**CR&R's Failure to Adequately Develop, Implement and/or Revise a Storm Water Pollution Prevention Plan in Violation of the Storm Water Permit and Clean Water Act**

**33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

297.   Coastkeeper incorporates the allegations contained in the above paragraphs as though fully set forth herein.

298.   Coastkeeper is informed and believes, and thereon alleges, that CR&R failed and continues to fail to adequately develop a SWPPP for the Facility, in violation of Sections A(4), A(5), A(6), A(7), A(8), and/or Provision E(2) of the Storm Water Permit.

299.   Coastkeeper is informed and believes, and thereon alleges, that CR&R failed and continues to fail to adequately implement a SWPPP for the Facility, in violation of Sections A(4), A(5), A(6), A(7), A(8), and/or Provision E(2) of the Storm Water Permit.

300.   Coastkeeper is informed and believes, and thereon alleges, that CR&R failed and continues to fail to adequately revise a SWPPP for the Facility, in violation of

Sections A(9) and A(10) of the Storm Water Permit.

301.   CR&R has been in violation of Sections A(4), A(5), A(6), A(7), A(8), A(9), A(10), and Provision E(2) of the Storm Water Permit at the Facility every day from at least May 19, 2009, to the present.

302.   CR&R's violations of Sections A(4), A(5), A(6), A(7), A(8), A(9), A(10), and Provision E(2) of the Storm Water Permit and the CWA at the Facility are ongoing and continuous.

303.   CR&R will continue to be in violation of Sections A(4), A(5), A(6), A(7), A(8), A(9), A(10), and Provision E(2) of the Storm Water Permit and the CWA each and every day CR&R fails to adequately develop, implement, and/or revise the SWPPP for the Facility.

304.   Each and every violation of the Storm Water Permit's SWPPP requirements at the Facility is a separate and distinct violation of the CWA.

305.   By committing the acts and omissions alleged above, CR&R is subject to an assessment of civil penalties for each and every violation of the CWA occurring from May 19, 2009, to the present pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

306.   An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above will irreparably harm Coastkeeper and the citizens of the State of California, for which harm Coastkeeper has no plain, speedy, or adequate remedy at law.

WHEREFORE, Coastkeeper prays for judgment against CR&R as set forth below.

## SIXTH CAUSE OF ACTION
### CR&R's Failure to Adequately Develop, Implement, and/or Revise a Monitoring and Reporting Program in Violation of the Storm Water Permit and Clean Water Act

### 33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)

307.   Coastkeeper incorporates the allegations contained in the above paragraphs as though fully set forth herein.

308.   Coastkeeper is informed and believes, and thereon alleges, that CR&R failed and continues to fail to adequately develop an M&RP for the Facility in violation of Sections B(3), B(4), B(5), B(7), and Provision E(3) of the Storm Water Permit.

309.   Coastkeeper is informed and believes, and thereon alleges, that CR&R failed and continues to fail to adequately implement an M&RP for the Facility in violation of Sections B(3), B(4), B(5), B(7), and Provision E(3) of the Storm Water Permit.

310.   Coastkeeper is informed and believes, and thereon alleges, that CR&R failed and continues to fail to adequately revise an M&RP for the Facility in violation of Section B(2) and Provision E(3) of the Storm Water Permit.

311.   CR&R has been in violation of the Section B and Provision E(3) of the Storm Water Permit at the Facility every day from at least May 19, 2009, to the present.

312.   CR&R's violations of Sections B(2), B(3), B(4), B(5), B(7), and Provision E(3) of the Storm Water Permit and the CWA at the Facility are ongoing and continuous.

313.   CR&R will continue to be in violation of Sections B(2), B(3), B(4), B(5), B(7), and Provision E(3) the Storm Water Permit and the CWA each and every day they fail to adequately develop, implement, and/or revise an M&RP for the Facility.

314.   Each and every violation of the Storm Water Permit's M&RP requirements at the Facility is a separate and distinct violation of the CWA.

315.   By committing the acts and omissions alleged above, CR&R is subject to an assessment of civil penalties for each and every violation of the CWA occurring from May 19, 2009, to the present pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

316.   An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above will irreparably harm Coastkeeper and the citizens of the State of California, for which harm Coastkeeper has no plain, speedy, or adequate remedy at law.

WHEREFORE, Coastkeeper prays for judgment against CR&R as set forth below.
///

## SEVENTH CAUSE OF ACTION

### CR&R's Failure to Report as Required by the Storm Water Permit in Violation of the Storm Water Permit and the Clean Water Act

### 33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)

317.   Coastkeeper incorporates the allegations contained in the above paragraphs as though fully set forth herein.

318.   Coastkeeper is informed and believes, and thereon alleges, that CR&R failed and continues to fail to submit accurate Annual Reports to the Regional Board in violation of Sections C(9) and C(10) of the Storm Water Permit.

319.   Coastkeeper is informed and believes, and thereon alleges, that CR&R's Annual Reports failed and continue to fail to meet the monitoring and reporting requirements of the Storm Water Permit in violation of Section B(14) of the Storm Water Permit.

320.   Coastkeeper is informed and believes, and thereon alleges, that CR&R's Annual Reports were, and will continue to be, inaccurate and/or failed and continue to fail to include complete annual comprehensive site evaluations, in violation of Sections A(9) and B(14) of the Storm Water Permit.

321.   Coastkeeper is informed and believes, and thereon alleges, that CR&R's Annual Reports were, and will continue to be, inaccurate in stating that the SWPPP's BMPs address existing potential pollutant sources, in violation of Storm Water Permit Sections A(6) and B(14).

322.   Coastkeeper is informed and believes, and thereon alleges, that CR&R's Annual Reports were, and will continue to be inaccurate, in stating that the SWPPP was up to date, in violation of Sections A(9) and B(14) of the Storm Water Permit.

323.   Coastkeeper is informed and believes, and thereon alleges, that CR&R has failed and continues to fail to report its non-compliance with the Storm Water Permit in its Annual Reports to the Regional Board, in violation of Sections B(14), C(9), C(10) and C(11) of the Storm Water Permit.

324.   Coastkeeper is informed and believes, and thereon alleges, that CR&R's Annual Reports failed and continue to fail to provide the explanations required by the Annual Report when there is non-compliance with the Storm Water Permit's terms, in violation of Section B(14) of the Storm Water Permit.

325.   CR&R has been in violation of the reporting requirements of the Storm Water Permit each day the Facility has operated without reporting as required by Section B(14) of the Storm Water Permit.

326.   CR&R's violations of the Reporting Requirements of the Storm Water Permit and the CWA are ongoing and continuous.

327.   CR&R has been in daily and continuous violation of Section B(14) of the Storm Water Permit every day since at least May 19, 2009.

328.   By committing the acts and omissions alleged above, CR&R is subject to an assessment of civil penalties for each and every violation of the CWA occurring from May 19, 2009, to the present pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

329.   An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above will irreparably harm Coastkeeper and the citizens of the State of California, for which harm Coastkeeper has no plain, speedy, or adequate remedy at law.

WHEREFORE, Coastkeeper prays for judgment against CR&R as set forth below.

## EIGHTH CAUSE OF ACTION

**CR&R's Discharges of Pollutants Not in Compliance with an NPDES Permit in Violation of Section 301(a) of the Clean Water Act**

**33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

330.   Coastkeeper incorporates the allegations contained in the above paragraphs as though fully set forth herein.

331.   Coastkeeper is informed and believes, and thereon alleges, that CR&R failed and continues to fail to obtain coverage for all discharges of storm water associated with

regulated industrial activities under the Storm Water Permit in violation of Section 301(a) of the Clean Water Act.

332.   Coastkeeper is informed and believes, and thereon alleges, that CR&R has discharged, and continues to discharge, pollutants from a point source to a water of the United States not in compliance with an NPDES Permit in violation of section 301(a) of the Clean Water Act.

333.   Every day pollutants are discharged from the Facility to a water of the United States not in compliance with an NPDES permit is a separate and distinct violation of the Clean Water Act.

334.   CR&R's violations of section 301(a) of the Clean Water Act are ongoing, and will continue each day point source discharges of pollutants occur from the Facility to the Receiving Waters.

335.   CR&R is subject to civil penalties for all violations of the Clean Water Act occurring since at least May 19, 2009.

336.   By committing the acts and omissions alleged above, CR&R is subject to an assessment of civil penalties for each and every violation of the CWA occurring from May 19, 2009, to the present pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

337.   An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above will irreparably harm Coastkeeper and the citizens of the State of California, for which harm Coastkeeper has no plain, speedy, or adequate remedy at law.

WHEREFORE, Coastkeeper prays for judgment against CR&R as set forth below.

## VI.   **RELIEF REQUESTED**

338.   Coastkeeper respectfully requests that this Court grant the following relief:

a.   A Court order declaring CR&R to have violated and to be in violation of the Storm Water Permit and section 301(a) of the CWA, 33 U.S.C. § 1311(a), for its discharges of pollutants not in compliance with the Storm Water Permit and for its

1  violations of the substantive and procedural requirements of the Storm Water Permit;

2       b.     A Court order enjoining CR&R from discharging pollutants without an

3  NPDES permit;

4       c.     A Court order enjoining CR&R from violating the substantive and

5  procedural requirements of the Storm Water Permit;

6       d.     A Court order requiring CR&R to develop and implement affirmative

7  injunctive measures to eliminate CR&R's violations of the substantive and procedural

8  requirements of the Storm Water Permit and the Clean Water Act;

9       e.     A Court order assessing civil monetary penalties for each violation of the

10  CWA at $37,500 per day per violation for violations occurring since May 19, 2009, as

11  permitted by 33 U.S.C. § 1319(d) and 40 C.F.R. § 19.4;

12       f.     A Court order awarding Coastkeeper their reasonable costs of suit, including

13  attorney, witness, expert, and consultant fees, as permitted by section 505(d) of the Clean

14  Water Act, 33 U.S.C. § 1365(d);

15       g.     Any other relief as this Court may deem appropriate.

16

17  Dated: July 18, 2014             Respectfully submitted,

18                                  LAWYERS FOR CLEAN WATER, INC.

19

20                           *Caroline Koch*

21                           Caroline Koch

22                           Daniel Cooper

23                           Attorney for Plaintiff
                         Orange County Coastkeeper

24

25

26

27

28

**Exhibit A**



3151 Airway Avenue, Suite F-110
Costa Mesa, CA 92626
Phone 714-850-1965
Fax 714-850-1592
www.Coastkeeper.org

May 1, 2014

**VIA CERTIFIED MAIL**

CR&R Inc.
Attention: Managing Agent
11292 Western Avenue
Stanton, California 90680

**VIA U.S. MAIL**

CT Corporation System
Registered Agent for CR&R Inc.
818 West Seventh Street
Second Floor
Los Angeles, California 90017

**Re:     Notice of Violation and Intent to File Suit Under the Clean Water Act**

To Whom It May Concern:

      I am writing on behalf of Orange County Coastkeeper ("Coastkeeper") in regard to violations of the Clean Water Act[1] and California's Storm Water Permit[2] occurring at 11292 Western Avenue, Stanton, California 90680 ("CR&R Facility" or "Facility"). This letter is being sent to you as the responsible owner and/or operator of the Facility, or as the registered agent for that entity. This letter puts CR&R Inc. (hereinafter referred to as the "CR&R Facility Owner and/or Operator") on notice of the violations of the Storm Water Permit occurring at the CR&R Facility including, but not limited to, discharges of polluted storm water from the Facility into local surface waters. Violations of the Storm Water Permit are violations of the Clean Water Act. As explained below, the CR&R Facility Owner and/or Operator is liable for violations of the Storm Water Permit and the Clean Water Act.

      Section 505(b) of the Clean Water Act, 33 U.S.C. § 1365(b), requires that a citizen give notice of his/her intention to file suit sixty (60) days prior to the initiation of a civil action under Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a). Notice must be given to the alleged violator, the Administrator of the United States Environmental Protection Agency ("EPA"), the Regional Administrator of the EPA, the Executive Officer of the water pollution control agency

---

[1] Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*
[2] National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ.

Case 8:14-cv-01133   Document 1   Filed 07/18/14   Page 49 of 74   Page ID #:49
Notice of Violation and Intent to File Suit
May 1, 2014
Page 2 of 18

in the State in which the violations occur, and, if the alleged violator is a corporation, the registered agent of the corporation. *See* 40 C.F.R. § 135.2(a)(1).

By this letter issued pursuant to 33 U.S.C. §§ 1365(a) and (b) of the Clean Water Act, (hereinafter "Notice Letter"), Coastkeeper puts the CR&R Facility Owner and/or Operator on notice that after the expiration of sixty (60) days from the date of this Notice Letter, Coastkeeper intends to file an enforcement action in Federal court against it for violations of the Storm Water Permit and the Clean Water Act.

## I.    BACKGROUND

### A.  <u>Orange County Coastkeeper</u>

Orange County Coastkeeper is a non-profit public benefit corporation organized under the laws of the State of California with its office at 3151 Airway Avenue, Suite F-110, Costa Mesa, California 92626. Coastkeeper has over 2,000 members who live and/or recreate in and around Orange County and the Anaheim Bay, Huntington Harbour, and Bola Chica watershed. Coastkeeper is dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of their local watersheds, including the Bolsa Chica Channel and its tributaries. To further these goals, Coastkeeper actively seeks federal and state agency implementation of the Clean Water Act, and, where necessary, directly initiates enforcement actions on behalf of itself and its members.

Members of Coastkeeper use and enjoy the waters into which the Facility discharges, including the Bolsa Chica Channel and its tributaries. Members of Coastkeeper use and enjoy the Bolsa Chica Channel, Sunset Bay – Huntington Harbor, Anaheim Bay – Outer Bay, and Anaheim Bay – Seal Beach National Wildlife Refuge to picnic, hike, view wildlife, and engage in scientific study, including monitoring activities, among other things. Procedural and substantive violations of the Storm Water Permit including, but not limited to, the discharge of pollutants from the Facility impairs each of these uses. Further, these violations are ongoing and continuous. Thus, the interests of Coastkeeper's members have been, are being, and will continue to be adversely affected by the CR&R Facility Owner's and/or Operator's failure to comply with the Storm Water Permit and the Clean Water Act.

### B.  <u>The Owner and/or Operator of the CR&R Facility</u>

Information available to Coastkeeper indicates that CR&R Inc. is an owner and/or operator of the Facility. CR&R Inc. is an active corporation registered in California. The registered agent for the corporation is CT Corporation System, 818 West Seventh Street, Second Floor, Los Angeles, California 90017.

The CR&R Facility Owner and/or Operator has violated and continues to violate the procedural and substantive terms of the Storm Water Permit including, but not limited to, the illegal discharge of pollutants from the Facility into local surface waters. As explained herein,

Case 8:14-cv-01133    Document 1    Filed 07/18/14    Page 50 of 74    Page ID #:50
Notice of Violation and Intent to File Suit
May 1, 2014
Page 3 of 18

the CR&R Facility Owner and/or Operator is liable for violations of the Storm Water Permit and the Clean Water Act.

### C.  **The CR&R Facility's Storm Water Permit Coverage**

Prior to beginning industrial operations, dischargers are required to apply for coverage under the Storm Water Permit by submitting a Notice of Intent to Comply with the Terms of the General Permit to Discharge Storm Water Associated with Industrial Activity ("NOI") to the State Water Resources Control Board ("State Board"). *See* Storm Water Permit, Finding #3. The CR&R Facility Owner and/or Operator submitted an NOI for the Facility, which was approved by the Santa Ana Regional Water Quality Control Board ("Regional Board") on March 6, 1992 ("NOI"). The NOI indicated that the Facility is, and thus sought Permit coverage for, approximately five (5) acres. The current Storm Water Pollution Prevention Plan ("SWPPP")[3] for the Facility indicates that the Facility is ten (10) acres, however. The NOI lists the Waste Discharge Identification ("WDID") number for the Facility as 8-30I000311.

The NOI lists the Standard Industrial Classification ("SIC") code for the Facility as 5093 (Scrap Recycling). The Facility SWPPP lists SIC code 4953 (Hazardous Waste Treatment Storage or Disposal) as an additional applicable SIC code, and information available to Coastkeeper indicates that SIC code 4212 also applies to the Facility.

### D.  **Storm Water Pollution and the Waters Receiving the Facility's Discharges**

With every significant rainfall event, millions of gallons of polluted storm water originating from industrial operations such as the CR&R Facility pour into storm drains and local waterways. The consensus among agencies and water quality specialists is that storm water pollution accounts for more than half of the total pollution entering surface waters each year. Such discharges of pollutants from industrial facilities contribute to the impairment of downstream waters and adversely impact aquatic-dependent wildlife. These contaminated discharges can and must be controlled for downstream ecosystems to regain their health.

Storm water discharges from waste disposal, storage, and transfer sites, like the CR&R Facility, contain pollutants such as: oil and grease ("O&G"); hydraulic fluids; transmission fluid; antifreeze; solvents; detergents; paints; aromatic hyrdocarbons; chlorinated hydrocarbons; total suspended solids ("TSS"); specific conductance ("SC"); heavy metals (such as copper, iron, lead, aluminum, and zinc); pathogens; and nutrients. Many of these pollutants are on the list of chemicals published by the State of California as known to cause cancer, birth defects, and/or developmental or reproductive harm.

The CR&R Facility Owner and/or Operator's NOI identifies the "Stanton Storm

---

[3] In a March 3, 2014, letter to the CR&R Facility Owner and/or Operator the Regional Board requested a copy of the current Facility SWPPP. On or about March 21, 2014, the Regional Board provided Coastkeeper a SWPPP for the CR&R Facility dated June 2012. It is Coastkeeper's understanding, based on the Regional Board's March 14 request, that this is the current SWPPP for the Facility.

Notice of Violation and Intent to File Suit
May 1, 2014
Page 4 of 18

Channel" as the name of the water receiving discharges from the Facility. However, the Facility SWPPP identifies the receiving water as "the Long Beach Outer Harbor (via the San Gabriel River)." Based on Coastkeeper's site investigations and review of publicly available information about area surface waters, pollutants from the Facility discharge to the City of Stanton municipal storm drain system that leads to the Stanton Storm Channel. The Stanton Storm Channel is tributary to the Bolsa Chica Channel. The Bolsa Chica Channel is tributary to Sunset Bay – Huntington Harbor, Anaheim Bay – Outer Bay, and Anaheim Bay – Seal Beach National Wildlife Refuge. The Bolsa Chica Channel, Sunset Bay – Huntington Harbor, Anaheim Bay – Outer Bay, and Anaheim Bay – Seal Beach National Wildlife Refuge are referred to collectively herein as the "Receiving Waters." Discharges of polluted storm water to the Receiving Waters pose carcinogenic and reproductive toxicity threats to the public and adversely affect the aquatic environment.

The Receiving Waters are ecologically sensitive areas. Although pollution and habitat destruction have drastically diminished once-abundant and varied fisheries, these waters still provide essential habitat for dozens of fish, bird, and invertebrate species. These pollutants harm the special aesthetic and recreational significance that the Receiving Waters have for people in the surrounding communities, including Coastkeeper's members. The public's use of the Receiving Waters for water contact sports exposes people to toxic metals and other contaminants in storm water and non-storm water discharges. Non-contact recreational and aesthetic opportunities, such as wildlife observation, are also impaired by polluted discharges to these waters.

The California Regional Water Quality Control Board, Santa Ana Regional Board ("Regional Board") issued the *Santa Ana River Basin Water Quality Control Plan* ("Basin Plan"). The Basin Plan identifies the "Beneficial Uses" of water bodies in the region. The exiting and/or potential Beneficial Uses for Bolsa Chica Channel include, at a minimum: Warm Freshwater Habitat and Water Contact Recreation.[4] The Basin Plan Beneficial Uses for Sunset Bay – Huntington Harbor, Anaheim Bay – Outer Bay, and Anaheim Bay – Seal Beach National Wildlife Refuge include: Navigation; Water Contact Recreation; Non-contact Water Recreation; Commercial and Sportfishing; Preservation of Biological Habitats of Special Significance; Wildlife Habitat; Rare, Threatened, or Endangered Species; Spawning, Reproduction and Development; Marine Habitat; and Estuarine Habitat. *See* Basin Plan at Table 3-1.

According to the 2010 303(d) List of Impaired Water Bodies, Bolsa Chica Channel is impaired for ammonia, pH, and indicator bacteria.[5] Sunset Bay – Huntington Harbor is impaired for copper, lead, sediment toxicity, and pathogens, among other pollutants.[6] Anaheim Bay –

---

[4] 2010 Integrated Report – All Assessed Waters, available at:
http://www.waterboards.ca.gov/water_issues/programs/tmdl/2010state_ir_reports/02253.shtml#12579 (last accessed on April 29, 2014).
[5] 2010 Integrated Report – All Assessed Waters, available at:
http://www.waterboards.ca.gov/water_issues/programs/tmdl/integrated2010.shtml, (last accessed on April 29, 2014).
[6] 2010 Integrated Report – All Assessed Waters, available at:
http://www.waterboards.ca.gov/water_issues/programs/tmdl/integrated2010.shtml, (last accessed on April 29, 2014).

Notice of Violation and Intent to File Suit
May 1, 2014
Page 5 of 18

Outer Bay and Anaheim Bay – Seal Bach National Wildlife Refuge are impaired for sediment toxicity, among other pollutants.[7] Polluted discharges from industrial sites such as the Facility contribute to the degradation of these already impaired surface waters and of the ecosystems that depend on these waters.

## II.    THE CR&R FACILITY AND ASSOCIATED DISCHARGES OF POLLUTANTS

### A.   The CR&R Facility Site Description

The Facility is a waste management, recycling and portable-storage container site that includes corporate offices, truck maintenance shops, a buy back recycling center, recycling précising facility for curbside collected recyclables, two truck washing areas, a diesel and gas fueling station, a spray paint booth, and a storage container fabrication workshop. The Facility SWPPP indicates that the CR&R Facility is approximately ten (10) acres, while the NOI seeks coverage under the Storm Water Permit for five (5) acres.

There are six (6) buildings at the Facility: (1) buyback recycling office, (2) vehicle maintenance shop, paint booth, and corporate office, (3) fabrication shop, (4) auxiliary building, (5) curbside recycling processing, and (6) steam cleaning bay and auxiliary building. The Facility also includes outdoor storage areas for curbside recycling materials, empty container bins, and equipment and truck parking. The outdoor curbside recycling material area is located in the northwest corner of the Facility adjacent to the curbside recycling processing building. The outdoor empty container storage area is located in the western most part of the Facility that abuts railroad tracks. The buy-back recycling center and the fueling pump island are also outdoors. While the SWPPP site map identifies each of these areas as part of the Facility, the narrative portions of the SWPPP fail to provide additional details about the specific location or the acreages of these areas, or how, if any, the industrial processes within these areas at the Facility are conducted.

The Facility property is bordered by Western Avenue at the corner of Western Avenue and Lincoln Way. The points of egress/ingress to the Facility include four (4) driveways leading to Western Avenue. Driveway 1 is located at the northern most corner of the Facility adjacent to a truck parking area and a truck scale area. Driveway 2 is the next most northern entrance/egress for the Facility. An additional trucks parking area is adjacent to Driveway 2. The outdoor buy-back recycling center is located between Driveway 1 and Driveway 2. Driveway 3 is located in the center of the Facility adjacent to the Facility corporate office, vehicle maintenance shop, and fuel pump island. Driveway 4 is the southern most entrance/egress for the Facility, and is adjacent to additional parking areas as well as a fabrication shop.

As explained herein, and based on the differing acreages in the NOI and SWPPP, Coastkeeper informs the CR&R Facility Owner and/or Operator that it has failed to obtain Storm

---

[7] 2010 Integrated Report – All Assessed Waters, available at:
http://www.waterboards.ca.gov/water_issues/programs/tmdl/integrated2010.shtml, (last accessed on April 29, 2014).

Case 8:14-cv-01133   Document 1   Filed 07/18/14   Page 53 of 74   Page ID #:53
Notice of Violation and Intent to File Suit
May 1, 2014
Page 6 of 18

Water Permit coverage for all industrial activities, and thus unpermitted discharges are ongoing, in violation of the Clean Water Act. In the event the CR&R Facility Owner and/or Operator does have Storm Water Permit coverage for these operations, it is in violation of the Storm Water Permit's procedural and substantive requirements.

### B.   The CR&R Facility Industrial Activities and Associated Pollutants

According to information available to Coastkeeper, the Facility is a waste disposal, transfer, and recycling facility that accepts municipal solid waste and recyclable materials. These materials are stored and sorted at the Facility, and are then either disposed of or sold. Vehicle and equipment maintenance, cleaning operations, and refueling are also conducted at the Facility. Trucks and other equipment, as well as empty waste bins are stored on site.

The Facility's industrial activities and areas are pollutant sources and include, but are not limited to: processing, loading, and unloading of solid waste and recyclable materials such as hazardous materials; metal crushing; storage of solid waste materials including, but not limited to, household hazardous material and electronic waste; bin storage, cleaning, and maintenance; vehicle and equipment cleaning operations; vehicle and equipment refueling; vehicle and equipment maintenance; vehicle and equipment painting; storage of materials associated with equipment and vehicle maintenance; and storage of vehicles and equipment. The CR&R Facility Owner and/or Operator also stores and/or generates hazardous wastes such as oil, hydraulic fluid, brake fluid, and antifreeze.

The pollutants associated with the Facility include, but are not limited to: O&G; heavy metals (such as copper, iron, lead, aluminum, mercury, silver, and zinc); TSS, nutrients, pathogens, and trash; ammonia; magnesium; arsenic; cadmium; cyanide; selenium; motor oils, aromatic hydrocarbons, chlorinated hydrocarbons, antifreeze, hydraulic fluids, brake fluids, transmission fluids, gear lube, and axel grease; fugitive dust, dirt and debris; and pH-affecting substances.

Information available to Coastkeeper indicates that storage of vehicles and equipment, storage of materials associated with waste storage and transfer, and other industrial activities occur throughout the Facility outdoors, without adequate cover to prevent storm water and non-storm water exposure to pollutant sources, and without secondary containment or other adequate treatment measures to prevent polluted storm water and non-storm water from discharging from the Facility. Further, information available to Coastkeeper indicates that the pollutants associated with the Facility have been and continue to be tracked throughout the Facility, where they accumulate at the storm water discharge points and the driveways leading to Western Avenue. This results in trucks and vehicles tracking trash, recyclables, sediment, dirt, oil and grease, metal particles, and other pollutants off-site. The resulting illegal discharges of polluted storm water and non-storm water impact Coastkeeper's members' use and enjoyment of the Receiving Waters by degrading the quality of those waters, and by posing risks to human health and aquatic life.

Case 8:14-cv-01133   Document 1   Filed 07/18/14   Page 54 of 74   Page ID #:54
Notice of Violation and Intent to File Suit
May 1, 2014
Page 7 of 18

### C.  CR&R Facility Storm Water Flows and Discharge Locations

The CR&R Facility Owner and/or Operator reports that there are four (4) discharge points located on site, which are identified in the Facility SWPPP as Sample Point #1 (SP1), Sample Point #2 (SP2), Sample Point #3 (SP3), and Sample Point #4 (SP4). As described in the Facility SWPPP, SP1 is located to the east of the scale house that is located on the south side of the facility; SP2 is located to the east of the parking lot that is located near the fueling station; SP3 is located to the east of the scale house that is located on the south side of the facility; and SP4 is located to the south of the property near the fabrication shop. As also stated in the SWPPP, surface drainage at the Facility flows from east to west, collecting at several storm drain inlets leading to these discharge points. However, the SWPPP site map does not indicate the specific locations of SP1-SP4, does not show the direction of drainage at the site, or identify the number or locations of the storm drain inlets.

The Facility site map does indicate that the storm water conveyance system includes seven (7) clarifiers. Clarifier #1 is located adjacent to Driveway 1, a truck scale area, a truck parking area, and the outdoor buy-back recycling center. Clarifier #2 is adjacent to Driveway 2, an additional truck parking area, and the outdoor buy-back recycling center. Clarifier #3 and Clarifier #5 are adjacent to Driveway 3, the corporate office, the vehicle maintenance shop, and the fuel pump island. Clarifier #4 is adjacent to Driveway 4, parking areas including truck parking, and the fabrication shop. Clarifier #6 is adjacent to the steam cleaning bay and auxiliary building. Clarifier #7 is adjacent to a container cleaning area and the paint booth. The narrative portion of the SWPPP states that Clarifiers #1 and #2 collect storm water associated with the Facility recycling material processing area, and that Clarifier #4 collects storm water associated with the Facility vehicle maintenance shop. No further description of Clarifiers #3, #5, #6, and #7 is provided. Nor does the SWPPP describe which discharge point is associated with which clarifier or industrial activity.

Information available to Coastkeeper, including Coastkeeper's observations and the Regional Board's September 28, 2009 denial of the CR&R Facility Owner's and/or Operator's request to terminate Permit coverage, indicates that Driveways 1-4 are also discharge points at the Facility.

## III.   VIOLATIONS OF THE CLEAN WATER ACT AND THE STORM WATER PERMIT

In California, any person who discharges storm water associated with industrial activity must comply with the terms of the Storm Water Permit in order to lawfully discharge pollutants. *See* 33 U.S.C. §§ 1311(a), 1342; 40 C.F.R. § 122.26(c)(1); *see also* Storm Water Permit, Fact Sheet at VII.

### A.   Discharges of Pollutants Not in Compliance with an NPDES Permit in Violation of Sections 301(a) and 402(p)(2)(B) of the Clean Water Act

The Clean Water Act requires that any person discharging pollutants to a water of the

Case 8:14-cv-01133   Document 1   Filed 07/18/14   Page 55 of 74   Page ID #:55
Notice of Violation and Intent to File Suit
May 1, 2014
Page 8 of 18

United States from a point source[8] obtain coverage under an NPDES permit. *See* 33 U.S.C. §§ 1311(a), 1342; 40 C.F.R. § 122.26(c)(1). The Storm Water Permit is an NPDES permit which regulates storm water discharges associated with certain industrial activities. Industrial activities conducted at the Facility fall under SIC codes 5093, 4953, and 4212, which require the CR&R Facility Owner and/or Operator to obtain Storm Water Permit coverage for the entire CR&R Facility.

Information available to Coastkeeper indicates that the CR&R Facility Owner and/or Operator has failed to obtain Storm Water Permit coverage for all regulated industrial activities conducted at the Facility.[9] Specifically, the CR&R Facility Owner and/or Operator conducts waste disposal, transfer, processing, recycling, bin storage, cleaning and maintenance, and vehicle and equipment storage and maintenance throughout the CR&R Facility. However, information available to Coastkeeper indicates that the CR&R Facility Owner and/or Operator has failed to include all regulated operations in its Storm Water Permit coverage, as the NOI sought coverage for only five (5) acres though the SWPPP describes the Facility as consisting of ten (10) acres. Further, the CR&R Facility Owner and/or Operator does not list any BMPs in the SWPPP for empty container storage, nor does it include this area in the Monitoring and Reporting Program ("M&RP"). Therefore, by failing to either include all regulated industrial activities in the Facility's existing Storm Water Permit coverage, or to obtain independent NPDES permit coverage, point source discharges from unpermitted areas of the Facility to the Receiving Waters are violations of the Clean Water Act.

Information available to Coastkeeper indicates that the CR&R Facility Owner and/or Operator has not obtained an individual NPDES permit for the Facility. It also has not obtained Storm Water Permit coverage for all of its regulated industrial activities at the Facility. Every day the CR&R Facility Owner and/or Operator discharges pollutants not in compliance with an NPDES permit is a separate and distinct violation of the Clean Water Act. The CR&R Facility Owner and/or Operator has been and continues to be in daily violation of the requirement to discharge to the Receiving Waters only in compliance with a Clean Water Act NPDES permit every day since beginning operations. The CR&R Facility Owner and/or Operator is subject to civil penalties for all violations of the Clean Water Act occurring since May 1, 2009.

### B.   Discharges of Polluted Storm Water from the CR&R Facility in Violation of Effluent Limitation B(3) of the Storm Water Permit

Effluent Limitation B(3) of the Storm Water Permit requires dischargers to reduce or prevent pollutants associated with industrial activity in storm water discharges through

---

[8] A point source is defined as any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged. 33 U.S.C. § 1362(14); *see* 40 C.F.R. § 122.2

[9] If the CR&R Facility Owner and/or Operator claims it has Storm Water Permit coverage for all of its regulated activities at the Facility, Coastkeeper puts the CR&R Facility Owner and/or Operator on notice that it is in violation of the Storm Water Permit as set forth herein.

implementation of best management practices ("BMPs") that achieve best available technology economically achievable ("BAT") for toxic pollutants[10] and best conventional pollutant control technology ("BCT") for conventional pollutants.[11] Benchmark Levels are relevant and objective standards to evaluate whether a permittee's BMPs achieve compliance with BAT/BCT standards as required by Effluent Limitation B(3) of the Storm Water Permit.[12]

Storm water sampling at the CR&R Facility demonstrates that the Facility's storm water discharges contain concentrations of pollutants above the Benchmark Levels. *See* Exhibit A (table listing the Facility's storm water samples exceeding Benchmark Level(s), as reported to the Regional Board by the CR&R Facility Owner and/or Operator and in samples collected by Coastkeeper). The repeated and significant exceedances of Benchmark Levels demonstrate that the CR&R Facility Owner and/or Operator has failed and continues to fail to develop and/or implement BMPs to prevent the exposure of pollutants to storm water and to prevent discharges of polluted storm water from the Facility, in violation of Effluent Limitation B(3) of the Storm Water Permit.

Information available to Coastkeeper indicates that the CR&R Facility Owner and/or Operator violates Effluent Limitation B(3) of the Storm Water Permit for failing to develop and/or implement BMPs that achieve BAT/BCT each time storm water is discharged from the Facility. *See, e.g.*, Exhibit B (setting forth dates of rain events resulting in a discharge at the Facility).[13] These discharge violations are ongoing and will continue each day the CR&R Facility Owner and/or Operator discharges polluted storm water without developing and/or implementing BMPs that achieve compliance with the BAT/BCT standards. Coastkeeper will update the number and dates of violation when additional information and data becomes available. Each time the CR&R Facility Owner and/or Operator discharges polluted storm water in violation of Effluent Limitation B(3) of the Storm Water Permit is a separate and distinct violation of the Storm Water Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. §1311(a). The CR&R Facility Owner and/or Operator is subject to civil penalties for all violations of the Clean Water Act occurring since May 1, 2009.

## C.   Discharges of Polluted Storm Water from the CR&R Facility in Violation of Receiving Water Limitations C(1) and C(2) of the Storm Water Permit

Receiving Water Limitation C(1) of the Storm Water Permit prohibits storm water discharges and authorized non-storm water discharges to surface water or ground water that

---

[10] Toxic pollutants are listed at 40 C.F.R. § 401.15 and include copper, lead, and zinc, among others.

[11] Conventional pollutants are listed at 40 C.F.R. § 401.16 and include biological oxygen demand, total suspended solids, oil and grease, pH, and fecal coliform.

[12] *See* EPA Storm Water Multi-Sector Permit (2008), Fact Sheet, p. 106; *see also*, EPA Storm Water Multi-Sector Permit, 65 Federal Register 64839 (2000).

[13] Exhibit B lists dates of significant rain events as measured at the Garden Grove Fire Station rain gauge from November 2008 to May 2013. Dates of significant rain events from October 2013 to April 2014 listed in Exhibit B were measured at the Santa Ana rain gauge, as current data from the Garden Grove Fire Station is not yet available. A significant rain event is defined by EPA as a rainfall event generating 0.1 inches or more of rainfall, which generally results in measurable discharges at a typical industrial facility.

adversely impact human health or the environment. Discharges that contain pollutants in concentrations that exceed levels known to adversely impact aquatic species and the environment constitute violations of Receiving Water Limitation C(1) of the Storm Water Permit and the Clean Water Act. Receiving Water Limitation C(2) of the Storm Water Permit prohibits storm water discharges and authorized non-storm water discharges that cause or contribute to an exceedance of an applicable water quality standard ("WQS").[14] Discharges that contain pollutants in excess of an applicable WQS violate Receiving Water Limitation C(2) of the Storm Water Permit and the Clean Water Act.

As explained above in Section I.D, the 2010 303(d) List of Impaired Water Bodies lists the Receiving Waters as impaired for multiple pollutants. Information available to Coastkeeper indicates that the Facility's storm water discharges contain elevated concentrations of pollutants, which can be acutely toxic and/or have sub-lethal impacts on the avian and aquatic wildlife in the Receiving Waters. *See* Exhibit C (table listing the Facility's storm water samples containing pollutants). Discharges of elevated concentrations of pollutants in the storm water from the Facility also adversely impact human health. These harmful discharges from the Facility are violations of Receiving Water Limitation C(1).

The Facility storm water discharges also contain concentrations of pollutants that cause or contribute to violations of applicable WQSs. *See* Exhibit A (table listing the Facility's storm water samples exceeding applicable WQSs, as reported to the Regional Board by the Facility Owner and/or Operator and in samples collected by Coastkeeper). Storm water discharges from the CR&R Facility that cause or contribute to exceedances of WQSs are violations of Receiving Water Limitation C(2).

Information available to Coastkeeper indicates that the storm water discharges from the CR&R Facility violate Receiving Water Limitations C(1) and/or C(2) each time storm water is discharged from the Facility. Exhibit B (setting forth dates of rain events resulting in a discharge at the Facility). These violations are ongoing, and will continue each time contaminated storm water is discharged in violation of Receiving Water Limitation C(1) and/or C(2) of the Storm Water Permit. Each time discharges of storm water from the Facility adversely impact human health or the environment is a separate and distinct violation of Receiving Water Limitation C(1) of the Storm Water Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. §1311(a). Each time discharges of storm water from the Facility cause or contribute to an exceedance of an applicable WQS is a separate and distinct violation of Receiving Water Limitation C(2) of the Storm Water Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. §1311(a). Coastkeeper will update the number and dates of violations when additional information

---

[14] As explained above in Section I.D, the Basin Plan designates Beneficial Uses for the Receiving Waters. Water quality standards are pollutant concentration levels determined by the state or federal agencies to be protective of designated Beneficial Uses. Discharges above water quality standards contribute to the impairment of the Receiving Waters' Beneficial Uses. Applicable water quality standards include, among others, the Criteria for Priority Toxic Pollutants in the State of California, 40 C.F.R. § 131.38 ("CTR"), and the water quality objectives in the Basin Plan. Given the Receiving Waters here, the applicable WQSs include both fresh and marine water quality objectives and beneficial uses.

Notice of Violation and Intent to File Suit
May 1, 2014
Page 11 of 18

becomes available. The CR&R Facility Owner and/or Operator is subject to civil penalties for all violations of the Clean Water Act occurring since May 1, 2009.

### D. Non-Storm Water Discharges from the Facility in Violation of Discharge Prohibition A(1) of the Storm Water Permit

Except as authorized by Special Conditions D(1) of the Storm Water Permit, Discharge Prohibition A(1) prohibits permittees from discharging materials other than storm water (non-storm water discharges) either directly or indirectly to waters of the United States. Prohibited non-storm water discharges must be either eliminated or permitted by a separate NPDES permit. *See* Storm Water Permit, Discharge Prohibition A(1).

Information available to Coastkeeper indicates that unauthorized non-storm water discharges occur at the Facility due to inadequate BMP development and/or implementation necessary to prevent these discharges. For example, unauthorized non-storm water discharges occur at the Facility when trucks track pollutants from the Facility onto Western Avenue, when trash escapes the Facility, during dust control, and/or when washing and cleaning activities occur. The CR&R Facility Owner and/or Operator conducts these activities without BMPs to prevent related non-storm water discharges. Non-storm water discharges resulting from tracking, trash, dust control, and/or washing and cleaning are not from sources that are listed among the authorized non-storm water discharges in Special Conditions D(1) of the Storm Water Permit and thus are always prohibited under the Storm Water Permit.

Coastkeeper puts the CR&R Facility Owner and/or Operator on notice that Discharge Prohibition A(1) of the Storm Water Permit is violated each time non-storm water is discharged from the CR&R Facility. These discharge violations are ongoing and will continue until the CR&R Facility Owner and/or Operator develops and implements BMPs that prevent prohibited non-storm water discharges or obtains separate NPDES permit coverage. Each time the CR&R Facility Owner and/or Operator discharges prohibited non-storm water in violation of Discharge Prohibition A(1) of the Storm Water Permit is a separate and distinct violation of the Storm Water Permit and section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a). Coastkeeper will update the number and dates of violations when additional information becomes available. The CR&R Facility Owner and/or Operator is subject to civil penalties for all violations of the Clean Water Act occurring since May 1, 2009.

### E. Failure to Develop, Implement and/or Revise an Adequate Storm Water Pollution Prevention Plan

Section A(1) and Provision E(2) of the Storm Water Permit require dischargers to have developed and implemented a SWPPP by October 1, 1992, or prior to beginning industrial activities, that meets all of the requirements of the Storm Water Permit. The objective of the SWPPP requirement is to identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm water discharges from the Facility, and to implement site-specific BMPs to reduce or prevent pollutants associated with industrial activities in storm water discharges. *See* Storm Water Permit, Section A(2). These BMPs must achieve

compliance with the Storm Water Permit's Effluent Limitations and Receiving Water Limitations. To ensure compliance with the Storm Water Permit, the SWPPP must be evaluated on an annual basis pursuant to the requirements of Section A(9), and must be revised as necessary to ensure compliance with the Storm Water Permit. *Id.*, Sections A(9) and (10).

Sections A(3) – A(10) of the Storm Water Permit set forth the requirements for a SWPPP. Among other requirements, the SWPPP must include: a site map showing the facility boundaries, storm water drainage areas with flow patterns, nearby water bodies, the location of the storm water collection, conveyance and discharge system, structural control measures, areas of actual and potential pollutant contact, areas of industrial activity, and other features of the facility and its industrial activities (*see* Storm Water Permit, Section A(4)); a list of significant materials handled and stored at the site (*see* Storm Water Permit, Section A(5)); a description of potential pollutant sources, including industrial processes, material handling and storage areas, dust and particulate generating activities, significant spills and leaks, non-storm water discharges and their sources, and locations where soil erosion may occur (*see* Storm Water Permit, Section A(6)). Sections A(7) and A(8) of the Storm Water Permit require an assessment of potential pollutant sources at the facility and a description of the BMPs to be implemented at the facility that will reduce or prevent pollutants in storm water discharges and authorized non-storm water discharges, including structural BMPs where non-structural BMPs are not effective.

Information available to Coastkeeper indicates that the CR&R Facility Owner and/or Operator has been conducting operations at the Facility with an inadequately developed and/or implemented SWPPP. For example, the SWPPP site map for the CR&R Facility does not include all the information required by Section A(4) of the Storm Water Permit, such as an outline of all storm water drainage areas within the Facility boundaries, descriptions of drainage flow direction(s), portions of the drainage area impacted by run-on from surrounding area, areas of soil erosion, nearby waterbodies, the location of the storm water collection and conveyance system, discharge or sampling locations, the location of municipal storm sewer drain inlets that may receive discharges, structural control measures that affect storm water discharges, an outline of all impervious areas of the Facility, locations where materials are directly exposed to precipitation, or all areas of industrial activity.

Further, the Facility SWPPP fails to list all significant materials handled at the site as required by Section A(5) of the Storm Water Permit. Section 1.4 of the SWPPP states only that "[s]ignificant materials used and stored at the site consist of small quantities of new and used waste fluids, including motor oils, antifreeze, hydraulic fluids, transmission fluids, gear lube, and axel grease." However, information available to Coastkeeper indicates that there are many other significant materials handled at the CR&R Facility, including municipal solid waste and recyclables. Because all significant materials have not been identified the SWPPP necessarily fails to describe the location where the material is stored, received, shipped, and handled. Even for the materials listed, the SWPPP fails to provide these required descriptions. Thus the SWPPP violates Section A(5) of the Storm Water Permit. Without properly identifying all significant materials at the Facility, the CR&R Facility Owner and/or Operator has not developed and implemented all appropriate BMPs.

Notice of Violation and Intent to File Suit
May 1, 2014
Page 13 of 18

In violation of Section A(6) of the Storm Water Permit, the Facility SWPPP does not describe all industrial activities and potential pollutant sources, as, for example, the SWPPP fails to identify and/or describe empty container storage, metal crushing, or waste and recyclable material sorting. The SWPPP also fails to describe the potential pollutants that are associated with the Facility's industrial activities.

In violation of Sections A(7) and A(8) of the Storm Water Permit, the Facility SWPPP includes no assessment of potential pollutant sources, the associated pollutants, and the corresponding BMPs. Nor does the SWPPP include an analysis of the effectiveness of the BMPs or a summary of the BMPs by pollutant source, as required by Section A(8). The Facility SWPPP does refer to "Appendix B" as a source of additional information about the Facility BMPs, but no such Appendix B was provided to Coastkeeper when it obtained a copy of the current SWPPP from the Regional Board.

Additional examples of the CR&R Facility Owner's and/or Operator's failure to develop and/or implement a SWPPP that complies with the Storm Water Permit include the lack of any description of dust and particulate pollutants generated by the Facility's industrial activities, the Facility's non-storm water discharges, or areas of soil erosion. The SWPPP also does not include a summary of all areas of industrial activities and the potential pollutants in a table resembling Table B in the Storm Water Permit, as required by Section A(6)(b) of the Storm Water Permit. Further, the descriptions of the BMPs in the SWPPP do not comply with the Storm Water Permit requirements.

The CR&R Facility Owner and/or Operator has also failed to revise the Facility's SWPPP to ensure compliance with the Storm Water Permit. Despite the significant concentrations of pollutants in the Facility's storm water discharges every year since at least the 2008-2009 Wet Season,[15] the Facility's current SWPPP is dated June 2012, and therefore was not revised to include additional BMPs to eliminate or reduce these pollutants, as required by the Storm Water Permit.

The CR&R Facility Owner and/or Operator has failed to adequately develop, implement, and/or revise a SWPPP, in violation of Section A and Provision E(2) of the Storm Water Permit. Every day the CR&R Facility operates with an inadequately developed, implemented, and/or properly revised SWPPP is a separate and distinct violation of the Storm Water Permit and the Clean Water Act. The CR&R Facility Owner and/or Operator has been in daily and continuous violation of the Storm Water Permit's SWPPP requirements since at least May 1, 2009. These violations are ongoing, and Coastkeeper will include additional violations when information becomes available. The CR&R Facility Owner and/or Operator is subject to civil penalties for all violations of the Clean Water Act occurring since May 1, 2009.

---

[15] The Storm Water Permit defines the Wet Season as October 1 – May 30.

F.   **Failure to Develop, Implement, and/or Revise an Adequate Monitoring and Reporting Program**

Section B(1) and Provision E(3) of the Storm Water Permit require facility operators to develop and implement an adequate Monitoring and Reporting Program ("M&RP") by October 1, 1992, or prior to the commencement of industrial activities at a facility, that meets all of the requirements of the Storm Water Permit. The primary objective of the M&RP is to detect and measure the concentrations of pollutants in a facility's discharge to ensure compliance with the Storm Water Permit's Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations. *See* Storm Water Permit, Section B(2). The M&RP must therefore ensure that BMPs are effectively reducing and/or eliminating pollutants at the facility, and must be evaluated and revised whenever appropriate to ensure compliance with the Storm Water Permit. *Id*.

Sections B(3) – B(16) of the Storm Water Permit set forth the M&RP requirements. Specifically, Section B(3) requires dischargers to conduct quarterly visual observations of all drainage areas within their facility for the presence of authorized and unauthorized non-storm water discharges. Section B(4) requires dischargers to conduct visual observations of storm water discharges from one storm event per month during the Wet Season. Sections B(3) and B(4) further require dischargers to document the presence of any floating or suspended material, oil and grease, discolorations, turbidity, odor, and the source of any pollutants. Dischargers must maintain records of observations, observation dates, locations observed, and responses taken to eliminate unauthorized non-storm water discharges and to reduce or prevent pollutants from contacting non-storm water and storm water discharges. *See* Storm Water Permit, Sections B(3) and B(4). Dischargers must revise the SWPPP in response to these observations to ensure that BMPs are effectively reducing and/or eliminating pollutants at the facility. *Id*., Section B(4).

Sections B(5) and B(7) of the Storm Water Permit require dischargers to visually observe and collect samples of storm water from all locations where storm water is discharged. Under Section B(5) of the Storm Water Permit, the facility owners and/or operators are required to collect at least two (2) samples from each discharge location at their facility during the Wet Season. Storm water samples must be analyzed for TSS, pH, SC, total organic carbon or O&G, and other pollutants that are likely to be present in the facility's discharges in significant quantities. *See* Storm Water Permit, Section B(5)(c). The Storm Water Permit requires facilities classified as SIC codes 4953 and 5093, such as the CR&R Facility, to also analyze storm water samples for Ammonia ($NH_3$), Magnesium (Mg), Chemical Oxygen Demand (COD), Arsenic (As), Cadmium (Cd), Cyanide (CN), Lead (Pb), Mercury (Hg), Selenium (Se), Silver (Ag); Zinc (Zn), Copper (Cu), Aluminum (Al), and Iron (Fe). *Id*.; *see also* Storm Water Permit, Table D, Sectors K and N.

Section B(7)(d) of the Storm Water Permit allows for the reduction of sampling locations in very limited circumstances when "industrial activities and BMPs within two or more drainage areas are substantially identical." If a discharger seeks to reduce sampling locations, the "[f]acility operators must document such a determination in the annual report." *Id*.

The CR&R Facility Owner and/or Operator has been conducting operations at the

Case 8:14-cv-01133   Document 1   Filed 07/18/14   Page 62 of 74   Page ID #:62
Notice of Violation and Intent to File Suit
May 1, 2014
Page 15 of 18

Facility with an inadequately developed, implemented, and/or revised M&RP. For example, for each of the past five (5) Wet Seasons the CR&R Facility Owner and/or Operator has failed to conduct non-storm water and storm water visual observations at each of its discharge points, i.e. Driveways 1-4. Thus the CR&R Facility Owner and/or Operator has failed to document the presence of any floating and suspended material, oil and grease, discolorations, turbidity, odor, and source of pollutants at the unobserved discharge points, in violation of Section B(3) of the Storm Water Permit. The CR&R Facility Owner and/or Operator has also failed to indicate the location of non-storm water visual observations in all of the past five (5) Wet Seasons to document which discharge point was observed. Additionally, the CR&R Facility Owner and/or Operator failed to provide the records required by Section B(4) of the Storm Water Permit for the monthly visual observations of storm water discharges.

The CR&R Facility Owner and/or Operator also failed to collect and analyze storm water samples as required by the Storm Water Permit. For example, only one storm water sample was collected during the 2009-2010, 2010-2011, 2011-2012 Wet Seasons, rather than the two storm water samples required by Section B(5) of the Storm Water Permit, despite qualifying rain events. Further, the CR&R Facility Owner and/or Operator failed to collect any storm water samples during the 2012-2013 Wet Season even though qualifying storm events occurred, in violation of Section B(5) of the Storm Water Permit. *See* Exhibit B. Also, the CR&R Facility Owner and/or Operator has failed to collect samples from all Facility discharge points, and has never analyzed storm water samples for Ammonia ($NH_3$), Magnesium (Mg), Arsenic (As), Cadmium (Cd), Cyanide (CN), Mercury (Hg), Selenium (Se), and Silver (Ag), as required by Table D of the Storm Water Permit.

The CR&R Facility Owner's and/or Operator's failure to conduct sampling and monitoring as required by the Storm Water Permit demonstrates that it has failed to develop, implement, and/or revise an M&RP that complies with the requirements of Section B and Provision E(3) of the Storm Water Permit. Every day that the CR&R Facility Owner and/or Operator conducts operations in violation of the specific monitoring requirements of the Storm Water Permit, or with an inadequately developed and/or implemented M&RP, is a separate and distinct violation of the Storm Water Permit and the Clean Water Act. The CR&R Facility Owner and/or Operator has been in daily and continuous violation of the Storm Water Permit's M&RP requirements every day since at least May 1, 2009. These violations are ongoing, and Coastkeeper will include additional violations when information becomes available. The CR&R Facility Owner and/or Operator is subject to civil penalties for all violations of the Clean Water Act occurring since May 1, 2009.

## G.  Failure to Comply with the Storm Water Permit's Reporting Requirements

Section B(14) of the Storm Water Permit requires a permittee to submit an Annual Report to the Regional Board by July 1 of each year. Section B(14) requires that the Annual Report include a summary of visual observations and sampling results, an evaluation of the visual observation and sampling results, the laboratory reports of sample analysis, the annual comprehensive site compliance evaluation report, an explanation of why a permittee did not implement any activities required, and other information specified in Section B(13).

Case 8:14-cv-01133   Document 1   Filed 07/18/14   Page 63 of 74   Page ID #:63
Notice of Violation and Intent to File Suit
May 1, 2014
Page 16 of 18

The CR&R Facility Owner and/or Operator has failed to submit Annual Reports that comply with the Storm Water Permit reporting requirements. For example, in each Annual Report since the filing of the 2008-2009 Annual Report, the CR&R Facility Owner and/or Operator certified that: (1) a complete Annual Comprehensive Site Compliance Evaluation was done pursuant to Section A(9) of the Storm Water Permit; (2) the SWPPP's BMPs address existing potential pollutant sources; and (3) the SWPPP complies with the Storm Water Permit, or will otherwise be revised to achieve compliance. However, information available to Coastkeeper indicates that these certifications are erroneous. For example, as discussed above, storm water samples collected from the Facility have always contained concentrations of pollutants above Benchmark Levels, thus demonstrating that the SWPPP's BMPs have never adequately addressed existing potential pollutant sources. Further, the Facility's SWPPP does not include many elements required by the Storm Water Permit, and thus it is erroneous to certify that the SWPPP complies with the Storm Water Permit.

The CR&R Facility Owner and/or Operator has also submitted incomplete Annual Reports. For instance, none of the Annual Reports from the past five (5) years have included an adequate, if any, evaluation of the visual observation and sampling and analysis results, in violation of Section B(14) of the Storm Water Permit. In addition, the facility operator must report any noncompliance at the time that the Annual Report is submitted, including 1) a description of the noncompliance and its cause, 2) the period of noncompliance, 3) if the noncompliance has not been corrected, the anticipated time it is expected to continue, and 4) steps taken or planned to reduce and prevent recurrence of the noncompliance. Storm Water Permit, Section C(11)(d). The CR&R Facility Owner and/or Operator did not report its non-compliance as required.

Finally, the Storm Water Permit requires a permittee whose discharge exceeds the Storm Water Permit Receiving Water Limitations to submit a written report identifying what additional BMPs will be implemented to achieve water quality standards. Storm Water Permit, Receiving Water Limitations C(3) and C(4). Information available to Coastkeeper indicates that the CR&R Facility Owner and/or Operator has failed to submit the reports required by Receiving Water Limitations C(3) and C(4) of the Storm Water Permit. As such, the CR&R Facility Owner and/or Operator is daily violation of this requirement of the Storm Water Permit.

Each of the failures to report as required is a violation of the Storm Water Permit, and indicates a continuous and ongoing failure to comply with the Storm Water Permit's reporting requirements. The CR&R Facility Owner and/or Operator has been, and will continue to be, in daily and continuous violation of the Storm Water Permit's reporting requirements until their reporting complies with the Permit. Every day that the CR&R Facility Owner and/or Operator operates the Facility without reporting as required by the Storm Water Permit is a separate and distinct violation of the Storm Water Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a). These violations are ongoing and Coastkeeper will update the number of violations throughout this enforcement action. CR&R Facility Owner and/or Operator is subject to civil penalties for all violations of the Clean Water Act occurring since May 1, 2009.

Case 8:14-cv-01133   Document 1   Filed 07/18/14   Page 64 of 74   Page ID #:64
Notice of Violation and Intent to File Suit
May 1, 2014
Page 17 of 18

IV.     **RELIEF AND PENALTIES SOUGHT FOR VIOLATIONS OF THE CLEAN WATER ACT**

Pursuant to Section 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d), and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4, each separate violation of the Clean Water Act subjects the violator to a penalty for all violations occurring during the period commencing five (5) years prior to the date of a notice of intent to file suit letter. These provisions of law authorize civil penalties of up to $37,500 per day per violation for all Clean Water Act violations on and after January 12, 2009. In addition to civil penalties, Coastkeeper will seek injunctive relief preventing further violations of the Clean Water Act pursuant to Sections 505(a) and (d), 33 U.S.C. § 1365(a) and (d), declaratory relief, and such other relief as permitted by law. Lastly, pursuant to Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), Coastkeeper will seek to recover its costs, including attorneys' and experts' fees, associated with this enforcement action.

V.      **CONCLUSION**

Coastkeeper is willing to discuss effective remedies for the violations described in this Notice Letter. However, upon expiration of the 60-day notice period, Coastkeeper will file a citizen suit under Section 505(a) of the Clean Water Act for the CR&R Facility Owner and/or Operator's violations of the Storm Water Permit. Please direct all communications to Coastkeeper's legal counsel:

> Daniel Cooper
>     daniel@lawyersforcleanwater.com
> Caroline Koch
>     caroline@lawyersforcelanwater.com
> Lawyers for Clean Water, Inc.
> 1004-A O'Reilly Avenue
> San Francisco, California 94129
> Tel: (415) 440-6520

Sincerely,

Garry Brown
Executive Director
Orange County Coastkeeper

Notice of Violation and Intent to File Suit
May 1, 2014
Page 18 of 18

## SERVICE LIST

**<u>VIA U.S. MAIL</u>**

Gina McCarthy
Administrator
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Jared Blumenfeld
Regional Administrator
U.S. Environmental Protection Agency
Region IX
75 Hawthorne Street
San Francisco, California 94105


Thomas Howard
Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California 95812

Kurt Berchtold
Executive Officer
Santa Ana Regional Water Quality Control Board
3737 Main Street, Suite 500
Riverside, California 92501

**Exhibit A**

| Sample collected by Coastkeeper (CK) or Discharger (D) | Date of sample collection | Sample Location | Parameter | Result | Units | Benchmark | Magnitude of Benchmark Exceedance | California Toxics Rule Criteria | Magnitude of CTR Exceedance | California Toxics Rule Criteria Marine Water | Magnitude of CTR Marine Water Exceedance | Basin Plan Fresh Water WQO | Magnitude of Basin Plan Fresh Water WQO Exceedance | Basin Plan Marine Water WQO | Magnitude of Basin Plan Marine Water WQO Exceedance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **2009/2010 WET SEASON** | | | | | | | | | | | | | | | |
| D | 12/7/09 | SP1 | pH | 6.21 | s.u. | 6.0-9.0 | n/a | 6.5-8.5 | n/a | none | n/a | 6.5-8.5 | n/a | 8.6-7.0 | n/a |
| D | 12/7/09 | SP2 | COD | 139.2 | mg/L | 120 | 1.16 | n/a | n/a | none | n/a | n/a | n/a | n/a | n/a |
| D | 12/7/09 | SP2 | pH | 7.15 | s.u. | 6.0-9.0 | n/a | 6.5-8.5 | n/a | none | n/a | 6.5-8.5 | n/a | 8.6-7.0 | n/a |
| D | 12/7/09 | SP3 | pH | 7.09 | s.u. | 6.0-9.0 | n/a | 6.5-8.5 | n/a | none | n/a | 6.5-8.5 | n/a | 8.6-7.0 | n/a |
| D | 12/7/09 | SP4 | pH | 7.86 | s.u. | 6.0-9.0 | n/a | 6.5-8.5 | 0.29 | none | n/a | 6.5-8.5 | 0.29 | 8.6-7.0 | n/a |
| **2010/2011 WET SEASON** | | | | | | | | | | | | | | | |
| D | 12/29/10 | SP1 | Cu | 0.086 | mg/L | 0.0123 | 6.991869919 | 0.014 | 6.142857143 | 0.0058 | 14.82758621 | none | n/a | none | n/a |
| D | 12/29/10 | SP1 | pH | 6.31 | s.u. | 6.0-9.0 | n/a | 6.5-8.5 | n/a | none | n/a | 6.5-8.5 | n/a | 8.6-7.0 | n/a |
| D | 12/29/10 | SP2 | Fe | 1.478 | mg/L | 1.0 | 1.478 | n/a | n/a | none | n/a | n/a | n/a | none | n/a |
| D | 12/29/10 | SP2 | pH | 6.25 | s.u. | 6.0-9.0 | n/a | 6.5-8.5 | n/a | none | n/a | 6.5-8.5 | n/a | 8.6-7.0 | n/a |
| D | 12/29/10 | SP3 | pH | 6.28 | s.u. | 6.0-9.0 | n/a | 6.5-8.5 | n/a | none | n/a | 6.5-8.5 | n/a | 8.6-7.0 | n/a |
| D | 12/29/10 | SP3 | Zn | 0.098 | mg/L | 0.11 | n/a | 0.12 | n/a | 0.095 | 1.031578947 | none | n/a | none | n/a |
| D | 12/29/10 | SP3 | Cu | 0.01 | mg/L | 0.0123 | n/a | 0.014 | n/a | 0.0058 | 1.724137931 | none | n/a | none | n/a |
| D | 12/29/10 | SP4 | pH | 6.57 | s.u. | 6.0-9.0 | n/a | 6.5-8.5 | n/a | none | n/a | 6.5-8.5 | n/a | 8.6-7.0 | n/a |
| D | 12/29/10 | SP4 | Zn | 0.202 | mg/L | 0.11 | 1.836363636 | 0.12 | 1.683333333 | 0.095 | 2.126315789 | none | n/a | none | n/a |
| D | 12/29/10 | SP4 | Fe | 3.905 | mg/L | 1.0 | 3.905 | n/a | n/a | none | n/a | n/a | n/a | none | n/a |
| **2011/2012 WET SEASON** | | | | | | | | | | | | | | | |
| D | 1/23/12 | SP1 | Fe | 1.01 | mg/L | 1.0 | 1.01 | n/a | n/a | none | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP1 | pH | 6.37 | s.u. | 6.0-9.0 | n/a | 6.5-8.5 | n/a | none | n/a | 6.5-8.5 | n/a | 8.6-7.0 | n/a |
| D | 1/23/12 | SP2 | pH | 6.49 | s.u. | 6.0-9.0 | n/a | 6.5-8.5 | n/a | none | n/a | 6.5-8.5 | n/a | 8.6-7.0 | n/a |
| D | 1/23/12 | SP3 | pH | 6.2 | s.u. | 6.0-9.0 | n/a | 6.5-8.5 | n/a | none | n/a | 6.5-8.5 | n/a | 8.6-7.0 | n/a |
| D | 1/23/12 | SP4 | Fe | 1.1 | mg/L | 1.0 | 1.1 | n/a | n/a | none | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP4 | pH | 6.27 | s.u. | 6.0-9.0 | n/a | 6.5-8.5 | n/a | none | n/a | 6.5-8.5 | n/a | 8.6-7.0 | n/a |
| **2013/2014 WET SEASON** | | | | | | | | | | | | | | | |
| CK | 2/27/2014 | Driveway 4 | Al | 3.6 | mg/L | 0.75 | 4.8 | n/a | n/a | none | n/a | none | n/a | none | n/a |
| CK | 2/27/2014 | Driveway 4 | Fe | 6.2 | mg/L | 1 | 6.2 | n/a | n/a | none | n/a | none | n/a | none | n/a |
| CK | 2/27/2014 | Driveway 4 | Zn | 0.5 | mg/L | 0.11 | 4.545454545 | 0.12 | 4.166666667 | 0.095 | 5.263157895 | none | n/a | none | n/a |
| CK | 2/27/2014 | Driveway 4 | Cu | 0.072 | mg/L | 0.0123 | 5.853658537 | 0.014 | 5.1 | 0.0058 | 12.4 | none | n/a | none | n/a |
| CK | 2/27/2014 | Driveway 4 | TSS | 320 | mg/L | 100 | 3.2 | n/a | n/a | none | n/a | none | n/a | none | n/a |

**Exhibit B**

| Date | Day of Week | Rain Fall |
|---|---|---|
| 11/4/08 | Tuesday | 0.3 |
| 11/26/08 | Wednesday | 1.68 |
| 12/15/08 | Monday | 0.98 |
| 12/16/08 | Tuesday | 0.97 |
| 12/18/08 | Thursday | 0.72 |
| 12/23/08 | Tuesday | 0.25 |
| 12/26/08 | Friday | 0.22 |
| 1/24/09 | Saturday | 0.22 |
| 2/6/09 | Friday | 0.6 |
| 2/7/09 | Saturday | 0.34 |
| 2/8/09 | Sunday | 0.14 |
| 2/9/09 | Monday | 0.1 |
| 2/10/09 | Tuesday | 0.14 |
| 2/14/09 | Saturday | 0.18 |
| 2/16/09 | Monday | 0.4 |
| 2/17/09 | Tuesday | 0.44 |
| 2/18/09 | Wednesday | 0.11 |
| 3/5/09 | Thursday | 0.13 |
| 10/14/09 | Wednesday | 0.35 |
| 12/8/09 | Tuesday | 0.75 |
| 12/13/09 | Sunday | 0.54 |
| 12/22/09 | Tuesday | 0.22 |
| 12/31/09 | Thursday | 0.11 |
| 1/18/10 | Monday | 0.32 |
| 1/19/10 | Tuesday | 1.07 |
| 1/20/10 | Wednesday | 0.71 |
| 1/21/10 | Thursday | 0.3 |
| 1/22/10 | Friday | 1.21 |
| 1/23/10 | Saturday | 0.48 |
| 1/27/10 | Wednesday | 0.18 |
| 2/6/10 | Saturday | 2.37 |
| 2/10/10 | Wednesday | 0.74 |
| 2/27/10 | Saturday | 0.66 |
| 2/28/10 | Sunday | 0.1 |
| 3/4/10 | Thursday | 0.1 |
| 3/7/10 | Sunday | 0.18 |
| 4/12/10 | Monday | 0.54 |
| 4/22/10 | Thursday | 0.16 |
| 4/28/10 | Wednesday | 0.21 |
| 10/6/10 | Wednesday | 0.16 |
| 10/7/10 | Thursday | 0.2 |
| 10/20/10 | Wednesday | 0.63 |

| Date | Day of Week | Rain Fall |
|---|---|---|
| 10/25/10 | Monday | 0.12 |
| 10/30/10 | Saturday | 0.28 |
| 11/20/10 | Saturday | 0.24 |
| 11/21/10 | Sunday | 0.39 |
| 11/24/10 | Wednesday | 0.12 |
| 11/28/10 | Sunday | 0.12 |
| 12/6/10 | Monday | 0.51 |
| 12/18/10 | Saturday | 0.71 |
| 12/19/10 | Sunday | 1.46 |
| 12/20/10 | Monday | 1.34 |
| 12/21/10 | Tuesday | 2.13 |
| 12/22/10 | Wednesday | 2.28 |
| 12/23/10 | Thursday | 0.43 |
| 12/26/10 | Sunday | 0.71 |
| 12/29/10 | Wednesday | 0.43 |
| 12/30/10 | Thursday | 0.59 |
| 1/3/11 | Monday | 0.72 |
| 2/16/11 | Wednesday | 0.18 |
| 2/19/11 | Saturday | 0.56 |
| 2/20/11 | Sunday | 0.24 |
| 2/26/11 | Saturday | 1.08 |
| 3/21/11 | Monday | 1.31 |
| 3/22/11 | Tuesday | 0.16 |
| 3/24/11 | Thursday | 0.49 |
| 3/25/11 | Friday | 0.25 |
| 5/17/11 | Tuesday | 0.11 |
| 5/18/11 | Wednesday | 0.43 |
| 10/5/11 | Wednesday | 0.12 |
| 10/6/11 | Thursday | 0.85 |
| 11/5/11 | Saturday | 0.15 |
| 11/7/11 | Monday | 0.2 |
| 11/12/11 | Saturday | 0.18 |
| 11/21/11 | Monday | 0.58 |
| 12/12/11 | Monday | 0.49 |
| 12/13/11 | Tuesday | 0.7 |
| 1/21/12 | Saturday | 0.45 |
| 1/22/12 | Sunday | 0.16 |
| 1/24/12 | Tuesday | 0.56 |
| 2/16/12 | Thursday | 0.22 |
| 2/28/12 | Tuesday | 0.18 |
| 3/18/12 | Sunday | 0.69 |
| 3/26/12 | Monday | 0.87 |

| Date | Day of Week | Rain Fall |
|---|---|---|
| 4/11/12 | Wednesday | 0.32 |
| 4/14/12 | Saturday | 0.64 |
| 4/26/12 | Thursday | 0.22 |
| 11/29/12 | Thursday | 0.33 |
| 11/30/12 | Friday | 0.17 |
| 12/1/12 | Saturday | 0.22 |
| 12/3/12 | Monday | 0.54 |
| 12/13/12 | Thursday | 0.57 |
| 12/18/12 | Tuesday | 0.13 |
| 12/24/12 | Monday | 0.78 |
| 12/26/12 | Wednesday | 0.13 |
| 12/30/12 | Sunday | 0.1 |
| 1/24/13 | Thursday | 0.59 |
| 1/25/13 | Friday | 0.33 |
| 2/9/13 | Saturday | 0.12 |
| 2/20/13 | Wednesday | 0.26 |
| 3/8/13 | Friday | 0.41 |
| 5/6/13 | Monday | 0.32 |
| 10/10/13 | Thursday | 0.24 |
| 11/21/13 | Thursday | 0.32 |
| 11/30/13 | Saturday | 0.22 |
| 12/8/13 | Sunday | 0.27 |
| 12/20/13 | Friday | 0.16 |
| 2/3/14 | Monday | 0.12 |
| 2/7/14 | Friday | 0.11 |
| 2/27/14 | Thursday | 0.44 |
| 2/28/14 | Friday | 0.5 |
| 3/1/14 | Saturday | 1.07 |
| 3/2/14 | Sunday | 0.33 |
| 4/2/14 | Wednesday | 0.12 |
| | **Total Rain Events of 0.1 or greater** | **114** |

**Exhibit C**

| Sample collected by Coastkeeper (CK) or Discharger (D) | Date of sample collection | Sample Location | Parameter | Result | Units | Benchmark | Magnitude of Benchmark Exceedance | California Toxics Rule Criteria Fresh Water | Magnitude of CTR Fresh Water Exceedance | California Toxics Rule Criteria Marine Water | Magnitude of CTR Marine Water Exceedance | Basin Plan Fresh Water WQO | Magnitude of Basin Plan Fresh Water WQO Exceedance | Basin Plan Marine Water WQO | Magnitude of Basin Plan Marine Water WQO Exceedance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **2009/2010 WET SEASON** | | | | | | | | | | | | | | | |
| D | 12/7/09 | SP1 | COD | 110.7 | mg/L | 120 | n/a | n/a | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP1 | TSS | 19.6 | mg/L | 100 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP1 | pH | 6.21 | s.u. | 6.0-9.0 | n/a | 6.5-8.5 | n/a | none | n/a | 6.5-8.5 | n/a | 8.6-7.0 | n/a |
| D | 12/7/09 | SP1 | SC | 90.1 | u/homs | 200 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP1 | TOC | 35.5 | mg/L | n/a | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP1 | Zn | ND | mg/L | 0.11 | n/a | 0.12 | n/a | 0.095 | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP1 | Fe | 0.81 | mg/L | 1.0 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP1 | Al | 0.566 | mg/L | 0.75 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP1 | Cu | ND | mg/L | 0.0123 | n/a | 0.014 | n/a | 0.0058 | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP1 | Pb | ND | mg/L | 0.069 | n/a | 0.082 | n/a | 0.221 | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP2 | COD | 139.2 | mg/L | 120 | 1.16 | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP2 | TSS | ND | mg/L | 100 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP2 | pH | 7.15 | s.u. | 6.0-9.0 | n/a | 6.5-8.5 | n/a | none | n/a | 6.5-8.5 | n/a | 8.6-7.0 | n/a |
| D | 12/7/09 | SP2 | SC | 136.5 | u/homs | 200 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP2 | TOC | 58.4 | mg/L | n/a | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP2 | Zn | ND | mg/L | 0.11 | n/a | 0.12 | n/a | 0.095 | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP2 | Fe | 0.21 | mg/L | 1.0 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP2 | Al | 0.255 | mg/L | 0.75 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP2 | Cu | ND | mg/L | 0.0123 | n/a | 0.014 | n/a | 0.0058 | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP2 | Pb | ND | mg/L | 0.069 | n/a | 0.082 | n/a | 0.221 | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP3 | COD | 42.8 | mg/L | 120 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP3 | TSS | ND | mg/L | 100 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP3 | pH | 7.09 | s.u. | 6.0-9.0 | n/a | 6.5-8.5 | n/a | none | n/a | 6.5-8.5 | n/a | 8.6-7.0 | n/a |
| D | 12/7/09 | SP3 | SC | 31.9 | u/homs | 200 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP3 | TOC | 10.7 | mg/L | n/a | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP3 | Zn | ND | mg/L | 0.11 | n/a | 0.12 | n/a | 0.095 | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP3 | Fe | 0.18 | mg/L | 1.0 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP3 | Al | 0.245 | mg/L | 0.75 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP3 | Cu | ND | mg/L | 0.0123 | n/a | 0.014 | n/a | 0.0058 | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP3 | Pb | ND | mg/L | 0.069 | n/a | 0.082 | n/a | 0.221 | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP4 | COD | 34.5 | mg/L | 120 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP4 | TSS | ND | mg/L | 100 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP4 | pH | 7.86 | s.u. | 6.0-9.0 | n/a | 6.5-8.5 | 0.29 | none | n/a | 6.5-8.5 | 0.29 | 8.6-7.0 | n/a |
| D | 12/7/09 | SP4 | TOC | ND | u/homs | 200 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP4 | SC | 26.1 | u/homs | n/a | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP4 | Zn | ND | mg/L | 0.11 | n/a | 0.12 | n/a | 0.095 | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP4 | Fe | 0.19 | mg/L | 1.0 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP4 | Al | 0.176 | mg/L | 0.75 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP4 | Cu | ND | mg/L | 0.0123 | n/a | 0.014 | n/a | 0.0058 | n/a | none | n/a | none | n/a |
| D | 12/7/09 | SP4 | Pb | ND | mg/L | 0.069 | n/a | 0.082 | n/a | 0.221 | n/a | none | n/a | none | n/a |
| **2010/2011 WET SEASON** | | | | | | | | | | | | | | | |
| D | 12/29/10 | SP1 | COD | 11.2 | mg/L | 120 | n/a | n/a | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/29/10 | SP1 | TSS | 30 | mg/L | 100 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/29/10 | SP1 | pH | 6.31 | s.u. | 6.0-9.0 | n/a | 6.5-8.5 | 0.19 | none | n/a | 6.5-8.5 | 0.19 | 8.6-7.0 | n/a |
| D | 12/29/10 | SP1 | SC | 26 | u/homs | 200 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/29/10 | SP1 | TOC | 23.3 | mg/L | n/a | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/29/10 | SP1 | Zn | 0.119 | mg/L | 0.11 | n/a | 0.12 | n/a | 0.095 | 1.252631579 | none | n/a | none | n/a |
| D | 12/29/10 | SP1 | Fe | 0.871 | mg/L | 1.0 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/29/10 | SP1 | Al | 0.204 | mg/L | 0.75 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/29/10 | SP1 | Cu | 0.086 | mg/L | 0.0123 | 6.991869919 | 0.014 | 6.142857143 | 0.0058 | 14.82758621 | none | n/a | none | n/a |
| D | 12/29/10 | SP1 | Pb | 0.044 | mg/L | 0.069 | n/a | 0.082 | n/a | 0.221 | n/a | none | n/a | none | n/a |
| D | 12/29/10 | SP2 | COD | 36.6 | mg/L | 120 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/29/10 | SP2 | TSS | 25 | mg/L | 100 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/29/10 | SP2 | pH | 6.25 | s.u. | 6.0-9.0 | n/a | 6.5-8.5 | 0.25 | none | n/a | 6.5-8.5 | 0.25 | 8.6-7.0 | n/a |
| D | 12/29/10 | SP2 | SC | 19.3 | u/homs | 200 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/29/10 | SP2 | TOC | 11.6 | mg/L | n/a | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/29/10 | SP2 | Zn | 0.094 | mg/L | 0.11 | n/a | 0.12 | n/a | 0.095 | n/a | none | n/a | none | n/a |
| D | 12/29/10 | SP2 | Fe | 1.478 | mg/L | 1.0 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/29/10 | SP2 | Al | 0.283 | mg/L | 0.75 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/29/10 | SP2 | Cu | ND | mg/L | 0.0123 | n/a | 0.014 | n/a | 0.0058 | n/a | none | n/a | none | n/a |
| D | 12/29/10 | SP2 | Pb | ND | mg/L | 0.069 | n/a | 0.082 | n/a | 0.221 | n/a | none | n/a | none | n/a |
| D | 12/29/10 | SP3 | COD | 16.9 | mg/L | 120 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/29/10 | SP3 | TSS | 7 | mg/L | 100 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/29/10 | SP3 | pH | 6.28 | s.u. | 6.0-9.0 | n/a | 6.5-8.5 | 0.22 | none | n/a | 6.5-8.5 | 0.22 | 8.6-7.0 | n/a |
| D | 12/29/10 | SP3 | SC | 9.1 | u/homs | 200 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/29/10 | SP3 | TOC | ND | mg/L | n/a | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/29/10 | SP3 | Zn | 0.098 | mg/L | 0.11 | n/a | 0.12 | n/a | 0.095 | 1.031578947 | none | n/a | none | n/a |
| D | 12/29/10 | SP3 | Fe | 0.338 | mg/L | 1.0 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/29/10 | SP3 | Al | 0.153 | mg/L | 0.75 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/29/10 | SP3 | Cu | 0.01 | mg/L | 0.0123 | n/a | 0.014 | n/a | 0.0058 | 1.724137931 | none | n/a | none | n/a |
| D | 12/29/10 | SP3 | Pb | ND | mg/L | 0.069 | n/a | 0.082 | n/a | 0.221 | n/a | none | n/a | none | n/a |
| D | 12/29/10 | SP4 | COD | 50.7 | mg/L | 120 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/29/10 | SP4 | TSS | 53 | mg/L | 100 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/29/10 | SP4 | pH | 6.57 | s.u. | 6.0-9.0 | n/a | 6.5-8.5 | n/a | none | n/a | 6.5-8.5 | n/a | 8.6-7.0 | n/a |
| D | 12/29/10 | SP4 | SC | 66 | u/homs | 200 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/29/10 | SP4 | TOC | 20 | mg/L | n/a | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/29/10 | SP4 | Zn | 0.202 | mg/L | 0.11 | 1.836363636 | 0.12 | 1.683333333 | 0.095 | 2.126315789 | none | n/a | none | n/a |
| D | 12/29/10 | SP4 | Fe | 3.905 | mg/L | 1.0 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/29/10 | SP4 | Al | 0.409 | mg/L | 0.75 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 12/29/10 | SP4 | Cu | ND | mg/L | 0.0123 | n/a | 0.014 | n/a | 0.0058 | n/a | none | n/a | none | n/a |
| D | 12/29/10 | SP4 | Pb | ND | mg/L | 0.069 | n/a | 0.082 | n/a | 0.221 | n/a | none | n/a | none | n/a |
| **2011/2012 WET SEASON** | | | | | | | | | | | | | | | |
| D | 1/23/12 | SP1 | COD | 65.3 | mg/L | 120 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP1 | TSS | 87.5 | mg/L | 100 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP1 | pH | 6.37 | s.u. | 6.0-9.0 | n/a | 6.5-8.5 | n/a | none | n/a | 6.5-8.5 | n/a | 8.6-7.0 | n/a |
| D | 1/23/12 | SP1 | SC | 90.1 | u/homs | 200 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP1 | TOC | ND | mg/L | n/a | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP1 | Zn | ND | mg/L | 0.11 | n/a | 0.12 | n/a | 0.095 | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP1 | Fe | 1.01 | mg/L | 1.0 | 1.01 | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP1 | Al | 0.418 | mg/L | 0.75 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP1 | Cu | ND | mg/L | 0.0123 | n/a | 0.014 | n/a | 0.0058 | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP1 | Pb | ND | mg/L | 0.069 | n/a | 0.082 | n/a | 0.221 | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP2 | COD | 71.6 | mg/L | 120 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP2 | TSS | 50.5 | mg/L | 100 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP2 | pH | 6.49 | s.u. | 6.0-9.0 | n/a | 6.5-8.5 | n/a | none | n/a | 6.5-8.5 | n/a | 8.6-7.0 | n/a |
| D | 1/23/12 | SP2 | SC | 119.3 | u/homs | 200 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |

| Sample collected by Coastkeeper (CK) or Discharger (D) | Date of sample collection | Sample Location | Parameter | Result | Units | Benchmark | Magnitude of Benchmark Exceedance | California Toxics Rule Criteria Fresh Water | Magnitude of CTR Fresh Water Exceedance | California Toxics Rule Criteria Marine Water | Magnitude of CTR Marine Water Exceedance | Basin Plan Fresh Water WQO | Magnitude of Basin Plan Fresh Water WQO Exceedance | Basin Plan Marine Water WQO | Magnitude of Basin Plan Marine Water WQO Exceedance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| D | 1/23/12 | SP2 | TOC | ND | mg/L | n/a | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP2 | Zn | ND | mg/L | 0.11 | n/a | 0.12 | n/a | 0.095 | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP2 | Fe | 0.74 | mg/L | 1.0 | 0.74 | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP2 | Al | 0.33 | mg/L | 0.75 | n/a | n/a | n/a | none | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP2 | Cu | ND | mg/L | 0.0123 | n/a | 0.014 | n/a | 0.0058 | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP2 | Pb | ND | mg/L | 0.069 | n/a | 0.082 | n/a | 0.221 | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP3 | COD | 19.2 | mg/L | 120 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP3 | TSS | 10.3 | mg/L | 100 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP3 | pH | 6.2 | s.u. | 6.0-9.0 | n/a | 6.5-8.5 | n/a | none | n/a | 6.5-8.5 | n/a | 8.6-7.0 | n/a |
| D | 1/23/12 | SP3 | SC | 21.4 | u/homs | 200 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP3 | TOC | ND | mg/L | n/a | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP3 | Zn | ND | mg/L | 0.11 | n/a | 0.12 | n/a | 0.095 | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP3 | Fe | 0.15 | mg/L | 1.0 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP3 | Al | 0.064 | mg/L | 0.75 | n/a | n/a | n/a | none | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP3 | Cu | ND | mg/L | 0.0123 | n/a | 0.014 | n/a | 0.0058 | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP3 | Pb | ND | mg/L | 0.069 | n/a | 0.082 | n/a | 0.221 | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP3 | COD | 24.5 | mg/L | 120 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP4 | TSS | 41.4 | mg/L | 100 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP4 | pH | 6.27 | s.u. | 6.0-9.0 | n/a | 6.5-8.5 | n/a | none | n/a | 6.5-8.5 | n/a | 8.6-7.0 | n/a |
| D | 1/23/12 | SP4 | SC | 25.6 | u/homs | 200 | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP4 | TOC | ND | mg/L | n/a | n/a | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP4 | Zn | ND | mg/L | 0.11 | n/a | 0.12 | n/a | 0.095 | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP4 | Fe | 1.1 | mg/L | 1.0 | 1.1 | none | n/a | none | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP4 | Al | 0.215 | mg/L | 0.75 | n/a | n/a | n/a | none | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP4 | Cu | ND | mg/L | 0.0123 | n/a | 0.014 | n/a | 0.0058 | n/a | none | n/a | none | n/a |
| D | 1/23/12 | SP4 | Pb | ND | mg/L | 0.069 | n/a | 0.082 | n/a | 0.221 | n/a | none | n/a | none | n/a |
| **2012/2013 WET SEASON** | | | | | | | | | | | | | | | |
| no samples | | | | | | | | | | | | | | | |
| **2013/2014 WET SEASON** | | | | | | | | | | | | | | | |
| CK | 2/27/2014 | Driveway 4 | Al | 3.6 | mg/L | 0.75 | 4.8 | none | n/a | none | n/a | none | n/a | none | n/a |
| CK | 2/27/2014 | Driveway 4 | Fe | 6.2 | mg/L | 1 | 6.2 | none | n/a | none | n/a | none | n/a | none | n/a |
| CK | 2/27/2014 | Driveway 4 | Zn | 0.5 | mg/L | 0.11 | 4.545454545 | 0.12 | 4.166666667 | 0.095 | 5.263157895 | none | n/a | none | n/a |
| CK | 2/27/2014 | Driveway 4 | Cu | 0.072 | mg/L | 0.0123 | 5.853658537 | 0.014 | 5.1 | 0.0058 | 12.4 | none | n/a | none | n/a |
| CK | 2/27/2014 | Driveway 4 | Pb | 0.03 | mg/L | 0.21 | n/a | none | n/a | 0.22 | n/a | none | n/a | none | n/a |
| CK | 2/27/2014 | Driveway 4 | TSS | 320 | mg/L | 100 | 3.2 | none | n/a | none | n/a | none | n/a | none | n/a |