1  LAWYERS FOR CLEAN WATER, INC.
2  Daniel Cooper (Bar No. 153576)
          Email:  daniel@lawyersforcleanwater.com
3  Caroline Koch (Bar No. 266068)
          Email:  caroline@lawyersforcleanwater.com
4  1004-A O'Reilly Avenue
5  San Francisco, California 94129
   Telephone:  (415) 440-6520
6  Facsimile:  (415) 440-4155
7
   *Attorneys for Plaintiff*
8  ORANGE COUNTY COASTKEEPER
9
   *Additional Plaintiff's Counsel Listed On Next Page*
10

11                     **UNITED STATES DISTRICT COURT**
12                     **CENTRAL DISTRICT OF CALIFORNIA**
13

14  ORANGE COUNTY COASTKEEPER, a          Civil Case No. 8:14-cv-01133-CJC-ANx
    California non-profit corporation,
15
                                          **[Proposed] CONSENT DECREE**
16                     Plaintiff,
17        vs.
18  CR&R INC., a California corporation,
19
                       Defendant.
20
21
22
23
24
25
26
27
28

ORANGE COUNTY COASTKEEPER
Colin Kelly (Bar No. 266956)
          Email:  colin@coastkeeper.org
3151 Airway Avenue, Suite F-110
Costa Mesa, California 92626
Telephone:  (714) 850-1965
Facsimile:  (714) 850-1592

1

## CONSENT DECREE

2       The following Consent Decree is entered into by and between Plaintiff Orange

3 County Coastkeeper ("Plaintiff" or "Coastkeeper"), and Defendant CR&R Incorporated

4 ("Defendant" or "CR&R"). The entities entering into this Consent Decree are each an

5 individual "Settling Party" and collectively the "Settling Parties."

6       **WHEREAS**, Coastkeeper is a non-profit public benefit corporation dedicated to

7 the preservation, protection, and restoration of the environment, the wildlife and the

8 natural resources of all waters of California, including the Bolsa Chica Channel and its

9 tributaries;

10       **WHEREAS**, CR&R operates recycling and truck/bin maintenance facilities at

11 11292 Western Avenue, Stanton, California 90680 ("Western Avenue Facility") and/or

12 7592 Orangewood Avenue, Stanton, California 90680 ("Orangewood Avenue Facility"

13 and collectively, the "Facilities");

14       **WHEREAS**, the Standard Industrial Classification ("SIC") codes applicable to the

15 Western Avenue Facility are 5093 (Scrap and Waste Materials) and 4212 (Local

16 Trucking Without Storage), and the SIC code applicable to the Orangewood Avenue

17 Facility is 4212 (Local Trucking Without Storage);

18       **WHEREAS**, Coastkeeper alleges that CR&R is an owner and operator of the

19 Facilities;

20       **WHEREAS,** discharges from the Facilities are regulated by the National Pollutant

21 Discharge Elimination System ("NPDES") General Permit NO CAS000001 [State Water

22 Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order

23 No. 97-03-DWQ ("Storm Water Permit"), the Federal Water Pollution Control Act, 33

24 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA"), CWA Sections 301(a), 307, and

25 402, 33 U. S. C. §§ 1311(a), 1317, 1342, and/or Orange County Sanitation District

26 ("OCSD") Ordinance No. OCSD-39, Wastewater Discharge Regulations, Revising

27 Article 1, Section 104, and Repealing Ordinance No. OCSD-37 (hereinafter, "OCSD

28 Ordinance 39");

1     **WHEREAS**, on May 1, 2014, Coastkeeper issued a 60-day notice letter ("Notice

2    Letter") to CR&R alleging violations of the Storm Water Permit and the Clean Water Act

3    at the Western Avenue Facility;

4     **WHEREAS**, on July 18, 2014, Coastkeeper filed a complaint against CR&R

5    (hereinafter, the "Complaint") in the United States District Court, Central District of

6    California (Civil Case No. 8:14-cv-01133-CJC-ANx) (hereinafter, the "Action");

7     **WHEREAS**, on September 10, 2014, Coastkeeper issued a supplemental 60-day

8    notice letter ("Supplemental Notice Letter") to CR&R alleging violations of the Storm

9    Water Permit, the Clean Water Act, and OCSD Ordinance 39 at the Western Avenue

10    Facility and violations of the Storm Water Permit and the Clean Water Act at the

11    Orangewood Avenue Facility;

12     **WHEREAS**, on November 12, 2014, Coastkeeper filed its First Amended

13    Complaint to add the allegations in the Supplemental Notice Letter to this Action;

14     **WHEREAS**, the First Amended Complaint is the operative complaint in the

15    Action;

16     **WHEREAS**, Coastkeeper alleges CR&R to be in violation of the substantive and

17    procedural requirements of the Storm Water Permit, the Clean Water Act, and OCSD

18    Ordinance 39;

19     **WHEREAS**, CR&R denies all allegations in the Notice Letter, Complaint,

20    Supplemental Notice Letter, and First Amended Complaint;

21     **WHEREAS**, the Settling Parties have agreed that it is in their mutual interest to

22    enter into a Consent Decree in this Action setting forth terms and conditions appropriate

23    to resolving the allegations set forth in the Notice Letter, Complaint, Supplemental

24    Notice Letter, and First Amended Complaint without further proceedings;

25     **WHEREAS**, the Settling Parties agree that all references hereinafter to CR&R's

26    future compliance with the "Storm Water Permit" shall refer to the then effective version

27    of the General Permit for Storm Water Discharges Associated with Industrial Activities,

28    Order NPDES No. CAS000001.

**WHEREAS**, all actions taken by CR&R pursuant to this Consent Decree shall be made in compliance with all applicable Federal and State laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this Action pursuant to Section 505(a)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A).

2. Venue is appropriate in the Central District pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facilities are located within this District.

3. The First Amended Complaint states claims upon which relief may be granted pursuant to Section 505 of the Clean Water Act, 33 U.S.C. § 1365.

4. Plaintiff has standing to bring this action.

5. The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

## I.   AGENCY REVIEW AND TERM OF CONSENT DECREE

6. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the Environmental Protection Agency (collectively "Federal Agencies") within three (3) business days of the Effective Date for agency review consistent with 40 C.F.R. § 135.5. The Federal Agencies' review period expires forty-five (45) days after receipt of this Consent Decree by the Federal Agencies, as evidenced by the return receipts, copies of which shall be provided by Coastkeeper to CR&R upon request. In the event that the Federal Agencies comment negatively on or object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time.

7. The term "Effective Date" as used in this Consent Decree shall mean the day that this Consent Decree is fully executed by the Settling Parties.

8.      This Consent Decree shall terminate three (3) years from the Effective Date, unless an action plan is required per paragraphs 28, 29, and/or 30, below, based on sampling results from the 2016-2017 reporting year,[1] in which case the Consent Decree will terminate upon complete implementation of the measures described in the action plan, and/or there is as of that date an ongoing, unresolved dispute regarding CR&R's compliance with this Consent Decree, in which case the Consent Decree will terminate within fifteen (15) days of notice by the Settling Parties that the dispute has been fully resolved.

## II.    COMMITMENTS OF THE SETTLING PARTIES

### A.    Pretreatment Permit Coverage and Wastewater Discharges

9.      _Pretreatment Permit_. As of the Effective Date, CR&R has a permit for wastewater discharges from the Western Avenue Facility from OCSD pursuant to and in compliance with the requirements of OCSD Ordinance 39, and has previously provided a copy of its OCSD permit for the Western Avenue Facility to Coastkeeper.

10.     _Wastewater Discharges_. No later than April 24, 2015, and consistent with and subject to paragraphs 13.1.2, 13.1.3 and 20 below, CR&R shall eliminate and prevent all discharges from the Western Avenue Facility to the OCSD sanitary sewer system other than those wastewater discharges described in CR&R's pretreatment permit application.

### B.    Storm Water Permit Coverage

11.     _Notice of Intent to Comply_. As of the Effective Date, pursuant to and in compliance with the requirements of Provision E and Attachment 3 of the Storm Water Permit, CR&R has submitted a Notice of Intent to Comply with the Storm Water Permit ("NOI") at the Orangewood Avenue Facility to the State Board. The NOI was submitted on the form provided with Attachment 3 of the Storm Water Permit, and shall include all required elements identified on the form.

///

---

[1] A "reporting year" is July 1 to June 30.

### C.    Storm Water Pollution Control Best Management Practices

12.    In addition to maintaining the current Best Management Practices ("BMPs") at the Facilities, CR&R shall develop and implement the BMPs identified herein, as well as any other BMPs necessary to comply with the provisions of this Consent Decree and the Storm Water Permit. Specifically, CR&R shall develop and implement BMPs to prevent and/or to reduce contamination in storm water discharged from the Facilities consistent with use of the Best Available Technology Economically Achievable ("BAT") and the Best Conventional Treatment Technology ("BCT") and/or in compliance with water quality standards ("WQS").

13.    2014-2015 Wet Season BMPs. No later than the dates set forth below, CR&R shall develop and implement the following interim BMPs at the Facilities. CR&R shall provide Coastkeeper written documentation demonstrating that the required interim BMPs have been implemented in compliance with this section within fifteen (15) days of completion.

    13.1.    Western Avenue Facility Interim BMPs.

        13.1.1.    Trench Drains. No later than April 24, 2015, CR&R shall install trench drains across Driveways 2, 3 and 4 along Western Avenue (see paragraph 17.1), and a comparable trench or other drainage inlet structure inside the fence at the northwest corner of the Western Avenue Facility in the vicinity of Driveway 1, which as an interim BMP will include appropriate Oil & Grease ("O&G") filter media (Filtrexx brand or equivalent product) in each trench drain. As a permanent BMP, the trench drains and/or other drainage inlet structure will be connected and direct storm water to the proposed, permanent BMPs pursuant to and on the schedule set forth in paragraphs 15.1 – 15.5, and as shown on the proposed Revised Site Plan

attached as **Exhibit 1** hereto.

13.1.2. <u>Drain Inlets</u>. No later than April 24, 2015, CR&R shall install shutoff valves in all inlets to facility clarifiers that will be linked to rain gauge(s). The rain gauge(s) shall be capable of recording rainfall to 0.01 inches and operate such that a rain event detected by the rain gauge(s) automatically triggers the shutoff valves ceasing flows to the clarifiers after one-tenth of an inch (1/10 inch) of rain has accumulated.

13.1.3. <u>Wash Rack Area</u>. No later than April 24, 2015, CR&R shall relocate its bin washing facilities underneath the existing roof immediately adjacent to the maintenance building, as shown on the proposed Revised Site Plan attached as **Exhibit 1** hereto, and which will be incorporated into an updated Storm Water Pollution Prevention Plan ("SWPPP") for the Western Avenue Facility. In connection with the relocation of the bin washing facilities, CR&R will also cap existing clarifier #4 so that it no longer discharges to the OCSD sanitary sewer and seal all inlets to clarifier #4.

13.1.4. <u>Fuel Pump Island</u>. No later than April 24, 2015, CR&R shall install a "speed bump" berm around the fuel island to prevent run-on of storm water during rainfall events. CR&R personnel shall inspect the captured water for a visible sheen and, if no sheen is observed, captured water may be directed to the nearest storm water discharge. If a sheen is observed, the captured water shall be pumped to a temporary storage container and properly disposed of.

1                       CR&R shall document (i.e., rainfall event form, which

2                       includes recording of visual observations and

3                       documentation of disposal) that these procedures are

4                       followed during each rain event.

5           13.1.5.         <u>Fabrication Building</u>. No later than April 24, 2015,

6                       CR&R shall install a "speed bump" berm in front of the

7                       opening to the fabrication building to prevent spills from

8                       leaving the building and entering the inlet(s) to clarifier

9                       #2.

10      13.2.         <u>Orangewood Avenue Facility Permanent Non-Structural BMPs</u>.

11 CR&R shall implement the following permanent, non-structural BMPs for Orangewood

12 Avenue Facility no later than March 15, 2015, and shall thereafter update the October

13 2014 SWPPP in accordance with paragraph 34 below to reflect these operational

14 changes:

15           13.2.1.         <u>Covering of Bins</u>. Bins located on the asphalt or concrete

16                       next to or behind the building will be covered

17                       immediately before and during rain events.

18                       "Immediately before" a rain event means two (2) hours

19                       prior to a storm as predicted by the hourly forecast for the

20                       City of Stanton reported by the National Weather

21                       Service.

22           13.2.2.         <u>Sweeping</u>. CR&R shall institute a weekly site sweeping

23                       or vacuuming program covering the paved exterior areas

24                       adjacent to or behind the building.

25           13.2.3.         <u>Use of Existing Clarifier for Process Water Disposal</u>.

26                       The existing clarifier will be used for disposal of bin

27                       washing/process water to the OCSD sanitary sewer

28                       system. The existing clarifier has a rain gauge capable of

recording rainfall to 0.01 inches and operates such that a rain event detected by the rain gauge automatically triggers the shutoff valves ceasing flows to the clarifiers after one-tenth of an inch (1/10 inch) of rain has accumulated. At the conclusion of any bin washing activities, the affected area will be cleaned and any soapy or other residual process water will be washed down and directed to the clarifier for proper disposal. Bin washing shall only be conducted within the area identified as the "trash bin wash area" on Figure 2 of the October 2014 SWPPP, which is the area immediately behind and to the east of the Orangewood Avenue Facility building.

13.2.4.   <u>Cessation of Bin Washing Activities Before Rain Events</u>. To prevent commingling of process water and storm water, CR&R shall not conduct bin washing immediately before or during rain events.

13.2.5.   <u>Routine Collection of Trash and Debris</u>.  Any trash or debris which may accumulate on site will be observed, collected, and disposed of on at least a weekly basis.

13.2.6.   <u>Filter Media</u>. Immediately before and during rain events, CR&R will install appropriate Total Suspended Solid ("TSS") filter media (Filtrexx brand or equivalent product) in and adjacent to the driveway entrance to the Orangewood Avenue Facility, as shown on the revised Site Plan for the Orangewood Avenue Facility attached as **Exhibit 2** hereto. CR&R will take appropriate measures to ensure that vehicles and heavy equipment do not cross over or otherwise damage said filter media

1    before or during rain events.

2    13.2.7.    Restricted Parking. CR&R shall use the paved parking lot

3        adjacent to the facility entrance and north of the roll-up

4        door on the west side of the building, as shown on the

5        revised Site Plan for the Orangewood Avenue Facility

6        attached as **Exhibit 2** hereto, for employee and/or visitor

7        parking only.

8    14.    Roofing. As a permanent, structural BMP, CR&R shall install a canopy over

9    the fuel pump island at the Western Avenue Facility. CR&R's implementation of the

10   roofing BMP at the Western Avenue Facility shall be as follows:

11   14.1.    If practicable, CR&R shall reduce the current number of diesel fuel

12       dispensers at the fuel pump island from three to two dispensers.

13       CR&R shall install a "speed bump" berm to prevent run-on in the fuel

14       pump island and a canopy sized to prevent wind driven rain from

15       accumulating inside the bermed area. The specifications for the

16       proposed canopy at the fuel pump island to be installed by CR&R are

17       attached as **Exhibit 3** hereto.

18   14.2.    No later than March 31, 2015, CR&R shall submit any and all local

19       regulatory agency approvable permit applications to obtain permits

20       needed to implement the roofing BMP described herein, and shall

21       provide Coastkeeper with copies of CR&R's permit applications

22       within five (5) business days of completion.

23   14.3.    No later than July 31, 2015, CR&R shall complete implementation of

24       the roofing BMP as described herein.

25   15.    Infiltration of Storm Water Discharges at the Western Avenue Facility.

26   CR&R is considering infiltration as a permanent, structural BMP to address storm water

27   discharges at the Western Avenue Facility. CR&R's investigation and/or implementation

28   of infiltration at the Western Avenue Facility shall be as follows:

15.1.   No later than April 3, 2015, CR&R shall complete its investigation of infiltration at the Western Avenue Facility. CR&R's investigation shall be completed consistent with, and any resulting structural infiltration BMPs shall be approved by the City of Stanton ("City") in accordance with the City's implementation of the "Infiltration Rate Evaluation Protocol and Factor of Safety Recommendations" and "Groundwater-Related Infiltration Feasibility Criteria" provided as Appendices VII and VIII, respectively, to the Technical Guidance Document related to Orange County's Watershed Infiltration and Hydromodification Management Plan ("WIHMP Guidance") (available here: http://prg.ocpublicworks.com/DocmgmtInternet/Download.aspx?id=1098, and incorporated herein).

15.2.   No later than April 3, 2015, CR&R shall provide Coastkeeper the results of its infiltration investigation and CR&R's plan for implementation of infiltration at the Western Avenue Facility ("Infiltration Investigation & Implementation Plan") in writing, which shall, at a minimum, require installation of infiltration areas designed to capture runoff from an 85th percentile storm, and shall comply with all requirements and/or standards set forth in the WIHMP Guidance. The Infiltration Investigation & Implementation Plan will provide that the trench drains at the driveway entrances along Western Avenue installed pursuant to paragraph 13.1.1 are connected and direct water to the infiltration BMP during the final BMP installation.

15.3.   Coastkeeper shall have fifteen (15) days upon receipt of CR&R's Infiltration Investigation & Implementation Plan to provide CR&R with comments.

15.4.    Within fifteen (15) days of CR&R's receipt of Coastkeeper's comments on the Infiltration Investigation & Implementation Plan, CR&R shall accept and incorporate Coastkeeper's comments, or shall provide Coastkeeper with a written explanation if CR&R refuses to develop and/or implement any of Coastkeeper's recommendations ("Final Infiltration Investigation & Implementation Plan"). Disputes regarding the Infiltration Investigation & Implementation Plan shall not impact the schedule for implementing any other BMPs set forth herein.

15.5.    No later than August 31, 2015, CR&R shall complete implementation of the infiltration BMP as described in the Final Infiltration Investigation & Implementation Plan.

16.    Advanced Treatment of Storm Water Discharges at the Western Avenue Facility. To the extent CR&R has not determined that it will implement storm water infiltration designed to capture all runoff from an 85th percentile storm at the Western Avenue Facility by May 31, 2015, CR&R shall begin development and implementation of advanced treatment control measures at each discharge location at the Western Avenue Facility. If applicable, the advanced treatment control measures shall be developed and implemented as follows:

16.1.    No later than July 31, 2015, CR&R shall provide Coastkeeper its plan for implementation of advanced treatment control measures ("Advanced Treatment Implementation Plan") in writing, which shall at a minimum require installation of advanced treatment control measures with sufficient capacity to treat, to the effluent quality required in Table 1, all runoff resulting from a rainfall intensity of at least two times the 85th percentile storm event.

16.2.    Coastkeeper shall have fifteen (15) days upon receipt of CR&R's Advanced Treatment Implementation Plan to provide CR&R with

1    comments.

2    16.3.    Within fifteen (15) days of CR&R's receipt of Coastkeeper's

3           comments on the Advanced Treatment Implementation Plan, CR&R

4           shall accept and incorporate Coastkeeper's comments, or shall provide

5           Coastkeeper with a written explanation if CR&R refuses to develop

6           and/or implement any of Coastkeeper's recommendations ("Final

7           Advanced Treatment Implementation Plan"). Disputes regarding the

8           Advanced Treatment Implementation Plan shall not impact the

9           schedule for implementing any other BMPs set forth herein.

10   16.4    No later than September 30, 2015, CR&R shall complete

11          implementation of the advanced treatment control measures as

12          described in the Final Advanced Treatment Implementation Plan.

13   **D.     Storm Water Discharge Locations and Storm Water Sampling**

14   17.    Storm Water Discharge Locations. The current storm water discharge

15   locations at the Facilities are described below.

16   17.1.    Western Avenue Facility. There are currently at least eight (8)

17          discharge locations at the Western Avenue Facility:

18          17.1.1.    Sample Point #1 (SP1),

19          17.1.2.    Sample Point #2 (SP2),

20          17.1.3.    Sample Point #3 (SP3),

21          17.1.4.    Sample Point #4 (SP4),

22          17.1.5.    Driveway 1,

23          17.1.6.    Driveway 2,

24          17.1.7.    Driveway 3, and

25          17.1.8.    Driveway 4.

26   Following the implementation of the BMPs provided for under this Consent Decree,

27   Driveway 1 will be permanently closed and there will be only three (3) storm water

28   discharge points at the Western Avenue Facility:  Driveways 2, 3 and 4.

17.2.    Orangewood Avenue Facility. There is currently one (1) discharge location at the Orangewood Avenue Facility:  Driveway 1.

18.    Sampling. The following storm water monitoring procedures shall be implemented at the Facilities:

18.1.    Frequency. During the life of this Consent Decree, CR&R shall collect samples from at least four (4) storm water discharges per reporting year from each of the discharge locations at the Facilities provided that at least four (4) rain events that produce a discharge occur during the applicable reporting year. A "rain event" is a storm separated by at least twelve (12) hours from a prior storm.

18.2.    Documentation. To document the storm water discharge and discharge location, the person who collects a storm water sample at the Facilities will take photographs of the storm water discharge and discharge location when the sample is collected.

18.3.    Parameters. All samples collected pursuant to this section shall be analyzed for the parameters listed in Table 1 subject to the provisions of paragraph 18.8, below.

18.4.    Lab. A laboratory accredited by the State of California shall analyze all samples collected pursuant to this Consent Decree.

18.5.    Detection Limits. The laboratory shall use analytical methods adequate to detect the individual parameters at or below the values specified in Table 1.

18.6.    Holding Time. All samples collected from the Facilities shall be delivered to the laboratory and analyzed within the holding times required in 40 CFR Part 136.

18.7.    Results. CR&R shall request that sample-analysis results and associated chain of custody forms be reported to them within fourteen (14) business days of laboratory receipt of the sample.

18.8.    Reporting. CR&R shall provide the complete lab results and photographs of all samples collected at the Facilities to Coastkeeper within five (5) business days of the receipt of the results by CR&R's attorney during the life of this Consent Decree.

18.9.    Sampling Reduction. CR&R may discontinue analyzing storm water samples collected pursuant to this Consent Decree at any discharge location(s) for a parameter listed in Table 1 that is not otherwise required by Section B.5.c.i. or Table D[2] of the Storm Water Permit, if the sample result for the Table 1 constituent is not detected above the limits stated in Table 1 for five (5) consecutive sample results, and CR&R has collected and analyzed the sample pursuant to this Consent Decree.

19.    Rain Gauge Data. In addition to the reporting requirements of paragraph 43, Defendants shall provide the rain gauge data records described in paragraph 13.1.2 to Coastkeeper along with lab results submitted to Coastkeeper pursuant to paragraph 18.6.

20.    Prevention of Storm Water Discharges at the Western Avenue Facility. After September 30, 2015, CR&R shall prevent storm water from discharging from the Western Avenue Facility at any location other than a discharge location where an infiltration basin and/or advanced treatment control measures have been implemented during rain events of less than or equal to the 85th percentile storm.

**E.    Visual Observations**

21.    Storm Water Discharge Observations. During the life of this Consent Decree, CR&R shall conduct visual observations at each discharge location during every rain event that produces a discharge.

22.    Non-Storm Water Discharge Observations. During the life of this Consent Decree, CR&R shall conduct monthly non-storm water visual observations at each discharge point.

---

[2] Or by Section XI.B.6.a.-b. or Table 1 of Order 2014-0057-DWQ.

23.     Infiltration Basin Observations. During the life of this Consent Decree, to detect potential discharge locations, CR&R shall conduct visual observations at the areas identified in the Final Infiltration Investigation & Implementation Plan as infiltration basins during every rain event that produces a discharge during operating hours.

24.     Visual Observation Records. CR&R shall maintain observation records to document compliance with this section, and shall provide Coastkeeper with a copy of these records within fourteen (14) days of receipt of a written request.

**F.     Employee Training**

25.     Within thirty (30) days of the Effective Date, CR&R shall develop and implement a training program to ensure (1) that there are a sufficient number of employees delegated to achieve compliance with the Storm Water Permit and this Consent Decree at the Facilities, and (2) that these employees are properly trained to perform the required activities to achieve compliance with the Storm Water Permit and this Consent Decree ("Training Program"). At a minimum the Training Program shall include:

25.1.     Non-Storm Water Discharges. Employees will be trained on the Storm Water Permit's prohibition of non-storm water discharges, so that employees know what non-storm water discharges are, that non-storm water discharges can result from improper surface washing or dust control methods, and how to detect and prevent non-storm water discharges.

25.2.     The SWPPP and BMPs. CR&R shall train all employees on the SWPPP and specifically BMP implementation and/or maintenance, as applicable, to ensure that BMPs are implemented effectively to prevent the exposure of pollutants to storm water, to prevent the discharge of contaminated storm water, and to ensure the proper treatment of storm water at the Facilities.

25.3.    Storm Water Sampling. CR&R shall designate an adequate number of employees necessary to collect storm water samples from each discharge location at the Facilities as required by this Consent Decree. The training shall include the proper sampling protocols, including chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory.

25.4.    Training Implementation. A private consultant, or a CR&R representative, who is familiar with the requirements of this Consent Decree and the Storm Water Permit shall implement the Training Program at the Facilities. The Training Program shall be conducted in the language of the employee(s) participating in the Training Program. The Training Program shall be repeated annually, or as necessary to ensure that all responsible employees are familiar with the requirements of this Consent Decree and the Storm Water Permit. All new staff will receive this training before assuming responsibilities for compliance with this Consent Decree or the Storm Water Permit.

26.    Training Records. CR&R shall maintain training records to document compliance with this section, and shall provide Coastkeeper with a copy of these records within fourteen (14) days of receipt of a written request.

**G.    Reduction of Pollutants in Discharges**

27.    Storm Water Contaminant Reduction. Contaminants in discharges shall not exceed the limits in Table 1 ("Numeric Limits"), except as provided herein. After October 1, 2015, the exceedance of any six (6) Numeric Limits in Table 1 for storm water samples collected during the 2015-2016 reporting year from the Western Avenue Facility shall trigger the action plan requirements of paragraphs 28 and/or 29, as applicable, unless the discharge occurs during a rain event above the design standard described in paragraph 15 and/or 16. After October 1, 2016, and for the remainder of the life of this Consent Decree, the exceedance of any four (4) Numeric Limits in

Table 1 for storm water samples collected in a single reporting year from the Western Avenue Facility shall trigger the action plan requirements of paragraphs 28 and/or 29, as applicable, unless the discharge occurs during a rain event above the design standard described in paragraph 15 and/or 16. After October 1, 2016, the exceedance of any six (6) Numeric Limits in Table 1 for storm water samples collected during the 2016-2017 reporting year from the Orangewood Avenue Facility shall trigger the action plan requirement of paragraph 30.  After October 1, 2017, and for the remainder of the life of this Consent Decree, the exceedance of any four (4) Numeric Limits in Table 1 for samples collected in a single reporting year from the Orangewood Avenue Facility shall trigger the action plan requirement of paragraph 30.

**Table 1. Numeric Limits for Storm Water Discharges[3]**

| Parameter | Limit | Source of Limit |
|---|---|---|
| Total Suspended Solids | 100 mg/L | 2008 EPA Benchmark |
| Total Recoverable Copper | **0.0123 mg/L** | 2008 EPA Benchmark |
| Total Recoverable Lead | **0.069 mg/L** | 2008 EPA Benchmark |
| Total Recoverable Zinc | **0.110 mg/L** | 2008 EPA Benchmark |
| Oil and grease | 15 mg/L | 2008 EPA Benchmark |
| Total Recoverable Aluminum | 0.750 mg/L | 2008 EPA Benchmark |
| Total Recoverable Iron | 1.0 mg/L | 2008 EPA Benchmark |
| Chemical Oxygen Demand | 120 mg/L | 2008 EPA Benchmark |
| pH | 6.5-8.5 units | Basin Plan |

28.    <u>Advanced Treatment Action Plan for Table 1 Exceedances – Western Avenue Facility</u>. If the exceedances of the Table 1 Numeric Limits in the storm water samples collected at the Western Avenue Facility in a particular reporting year are more than the number(s) permitted in paragraph 27 above, and the samples were collected from a rain event within the design standard described in paragraph 16 and collected at a discharge location at the Western Avenue Facility where advanced

---

[3] Several of the Numeric Limits are hardness dependent. The hardness dependent limits are in bold. The 2008 EPA Benchmark based limits expressed assume hardness of 101 mg/l $CaCO_3$. Defendant shall adjust the limit using the methods provided in Appendix J of the 2008 EPA Multi-Sector General Permit based on receiving water sampling hardness data as applicable.

treatment control measures have been implemented pursuant to paragraph 16, then CR&R shall submit a plan for reducing and/or eliminating the discharge of pollutants designed to achieve the Table 1 limits ("Advanced Treatment Action Plan"). In any year that an Advanced Treatment Action Plan is required, it shall be submitted by June 1 following the Wet Season[4] during which the exceedance(s) occurred.

      28.1.   <u>Requirements</u>. Each Advanced Treatment Action Plan submitted shall include at a minimum: (1) the identification of the parameter(s) discharged in excess of the Table 1 limit(s), (2) an assessment of the source for each parameter exceedance, (3) the identification of additional BMPs, including treating storm water, that will be implemented to achieve compliance with the limit(s), and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no case later than October 1 (prior to the next Wet Season).

      28.2.   <u>Review</u>. Coastkeeper shall have thirty (30) days upon receipt of CR&R's Advanced Treatment Action Plan to provide CR&R with comments. Within fifteen (15) days of CR&R's receipt of Coastkeeper's comments on the Advanced Treatment Action Plan, CR&R shall accept and incorporate Coastkeeper's comments of recommended BMPs into the Advanced Treatment Action Plan, or shall provide Coastkeeper with a written explanation if CR&R refuses to develop and/or implement any of Coastkeeper's recommended BMPs. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Advanced Treatment Action Plan. Any disputes as to the adequacy of an Advanced Treatment Action Plan shall be resolved pursuant to the

---

[4] Wet Season is defined as October 1-April 30.

dispute resolution provisions of this Consent Decree, set out in Section III below.

29. <u>Infiltration Action Plan – Western Avenue Facility</u>. If CR&R's or Coastkeeper's sampling and/or visual observations evidence a discharge from the Western Avenue Facility that occurs during a rain event at or below the 85th percentile storm, as set forth in paragraph 15, if applicable, CR&R shall, within forty-five (45) days of that discharge, submit to Coastkeeper a plan to modify BMPs to comply with that design standard ("Infiltration Action Plan").

29.1. <u>Requirements</u>. Each Infiltration Action Plan submitted shall include, at a minimum, consideration of: (1) increased size infiltration basins, (2) increased detention, (3) improved maintenance, and/or (4) improved pretreatment. The Infiltration Action Plan shall also include data, drawing(s), and other design rationale demonstrating that the proposal will achieve compliance with the design standard.

29.2. <u>Review</u>. Coastkeeper shall have fifteen (15) days upon receipt of CR&R's Infiltration Action Plan to provide CR&R with comments. Within fifteen (15) days of CR&R's receipt of Coastkeeper's comments on the Infiltration Action Plan, CR&R shall accept and incorporate Coastkeeper's comments of recommended BMPs into the Infiltration Action Plan, or shall provide Coastkeeper with a written explanation if CR&R refuses to develop and/or implement any of Coastkeeper's recommended BMPs. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Infiltration Action Plan. Any disputes as to the adequacy of an Infiltration Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III below.

30.     Orangewood Avenue Facility Action Plan. If the exceedances of the Table 1 Numeric Limits in the storm water samples collected at the Orangewood Avenue Facility in a particular reporting year are more than the number(s) permitted in paragraph 27 above, then CR&R shall submit a plan for reducing and/or eliminating the discharge of pollutants designed to achieve the Table 1 Numeric Limits during the next wet season at the Orangewood Avenue Facility ("Orangewood Avenue Facility Action Plan"). In any year that an Action Plan is required, it shall be submitted by June 1 following the wet season during which the exceedance occurred.

30.1.   Requirements. Each Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the Numeric Limit(s), (2) an assessment of the source of each contaminant exceedance, (3) the identification of additional BMPs, including treating stormwater or other appropriate measures, that will be implemented to achieve compliance with the Numeric Limit(s), and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no case later than October 1 (prior to the next Wet Season).

30.2.   Review. Coastkeeper shall have thirty (30) days upon receipt of CR&R's Orangewood Avenue Facility Action Plan to provide CR&R with comments. Within fifteen (15) days of CR&R's receipt of Coastkeeper's comments on the Orangewood Avenue Facility Action Plan, CR&R shall accept and incorporate Coastkeeper's comments of recommended BMPs into the Orangewood Avenue Facility Action Plan, or shall provide Coastkeeper with a written explanation if CR&R refuses to develop and/or implement any of Coastkeeper's recommended BMPs. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP

set forth in the Orangewood Avenue Facility Action Plan. Any disputes as to the adequacy of the Orangewood Avenue Facility Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III below.

31.     When an Advanced Treatment Action Plan, an Infiltration Action Plan, and/or an Orangewood Avenue Facility Action Plan is completed, CR&R shall revise its SWPPP and/or the M&RP, as applicable, prior to the next Wet Season, or within thirty (30) days of completion, whichever is sooner, to reflect the changes required by the action plan. CR&R shall notify Coastkeeper when the action plan has been completely implemented, and shall submit the revised SWPPP and/or M&RP to Coastkeeper for review and comment as set out in paragraphs 32-39 below.

**H.     Storm Water Pollution Prevention Plan**

32.     Orangewood Avenue Facility SWPPP. CR&R has developed and shall implement its Storm Water Pollution Prevention Plan for the Orangewood Avenue Facility. CR&R's SWPPP for the Orangewood Avenue Facility shall comply with all requirements set forth in Section A of the Storm Water Permit and the terms of this Consent Decree.

33.     Western Avenue Facility SWPPP.  No later than April 30, 2015, CR&R shall revise the SWPPP for the Western Avenue Facility to incorporate the requirements of the Storm Water Permit and this Consent Decree, including but not limited to the following:

33.1.     Identifying the individual(s) responsible for compliance with the Storm Water Permit and this Consent Decree including specifying which individual is responsible for what area of compliance (e.g., John Doe: collecting storm water samples);

33.2.     Revising the facility site map and site description to reflect all areas associated with processing, loading, and unloading of solid waste and recyclable materials such as hazardous materials; metal crushing;

storage of solid waste materials including, but not limited to, household hazardous material and electronic waste; bin storage, cleaning, and maintenance; vehicle and equipment cleaning operations; vehicle and equipment refueling; vehicle and equipment maintenance; vehicle and equipment painting; storage of materials associated with equipment and vehicle maintenance; storage of vehicles and equipment; and the requirements of this Consent Decree, and;

33.3.    Revising the list of significant materials description to include the identification of the location where the material is being stored, received, shipped, and handled.

34.    Revising the SWPPP. CR&R shall revise the Orangewood Avenue Facility and/or the Western Avenue Facility SWPPP(s) if there are any changes in the Facilities' operations, including but not limited to changes to storm water discharge point(s) or changes or additions to the BMPs at the Facilities whether made pursuant to an Advanced Treatment Action Plan, an Infiltration Action Plan, or an Orangewood Avenue Facility Action Plan or not, within sixty (60) days of the occurrence of any of the above-listed events.

35.    Commenting on Revised SWPPPs. CR&R shall submit each revised SWPPP to Coastkeeper for review and comment within ten (10) days of its completion. Coastkeeper shall provide comments, if any, to the CR&R within thirty (30) days of receipt of the SWPPP. CR&R shall incorporate Plaintiff's comments into the SWPPP or explain in writing why any comment is not incorporated within thirty (30) days of receiving Coastkeeper's comments. Any disputes over the adequacy of a SWPPP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III below.

I.    **Monitoring and Reporting Plan**

36.    <u>Orangewood Avenue Facility M&RP</u>. CR&R has developed and shall implement its Monitoring and Reporting Program ("M&RP") for the Orangewood Avenue Facility. CR&R's M&RP shall comply with the requirements set forth in Section B of the Storm Water Permit and the terms of this Consent Decree, including but not limited to the sampling requirements set forth at paragraph 18. CR&R's M&RP for the Orangewood Avenue Facility shall be subject to the review process and revision requirement set forth in paragraphs 38 and 39, below.

37.    <u>Western Avenue Facility M&RP</u>. No later than April 30, 2015, CR&R shall revise the M&RP for the Western Avenue Facility to incorporate the requirements of the Storm Water Permit and this Consent Decree, including but not limited to the sampling requirements set forth at paragraph 18 and:

37.1.    Creation of a visual inspection form that must be used by trained facility personnel when conducting the visual observations and monitoring of storm water required under the Storm Water Permit and/or under this Consent Decree.

37.2.    Include the Storm Water Permit's sampling and monitoring requirements including but not limited to the facility's sample locations.

37.3.    Include sample analysis for all applicable pollutants including at a minimum those listed in Table 1.

38.    <u>Revising the M&RP</u>. CR&R shall revise the Orangewood Avenue Facility and/or the Western Avenue Facility MR&P if there are any changes in the Facilities' operations, including but not limited to changes to storm water discharge point(s) or changes or additions to the BMPs at the Facilities whether made pursuant to an Advanced Treatment Action Plan, an Infiltration Action Plan, or an Orangewood Avenue Facility Action Plan or not, within thirty (30) days of the occurrence of any of the above-listed events.

1    39.    <u>Commenting on Revised M&RPs</u>. CR&R shall submit each revised M&RP

2  to Coastkeeper for review and comment within ten (10) days of its completion.

3  Coastkeeper shall provide comments, if any, to the CR&R within thirty (30) days of

4  receipt of the M&RP. CR&R shall incorporate Plaintiff's comments into the M&RP or

5  explain in writing why any comment is not incorporated within thirty (30) days of

6  receiving Coastkeeper's comments. Any disputes over the adequacy of the M&RP shall

7  be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out

8  in Section III below.

9    **J.    Compliance Monitoring and Reporting**

10    40.    <u>Site Inspections</u>. Coastkeeper and its representatives may conduct up to two

11  (2) Wet Season site inspections and two (2) dry season site inspections per year at the

12  Facilities during the life of this Consent Decree.

13    40.1.    The site inspections shall occur during normal business hours and

14          Coastkeeper shall provide CR&R with forty-eight (48) hours notice

15          prior to each Wet Season site inspection and seventy-two (72) hours

16          notice prior to each dry season site inspection.

17    40.2.    During the site inspections, Coastkeeper and its representatives shall

18          be allowed access to the Facilities' SWPPP, M&RP, and other

19          monitoring records, reports, and sampling data for the Facilities.

20    40.3.    During the site inspections, Coastkeeper and/or its representatives

21          may collect samples of discharges from the Facilities. A certified

22          California laboratory shall analyze samples collected by Coastkeeper

23          and copies of the lab reports shall be provided to CR&R within five

24          (5) business days of receipt. At the request of CR&R, the samples

25          shall be split and one half provided to CR&R so as to allow CR&R to

26          have its own certified California laboratory analyze the samples, in

27          which case CR&R shall provide the laboratory results to Coastkeeper

28          within five (5) business days of receipt.

41.   <u>Compliance Monitoring and Oversight</u>. CR&R agrees to partially defray Coastkeeper's monitoring of CR&R's compliance with this Consent Decree in the amount of $30,000.00 (Thirty Thousand Dollars). Provided that the Federal Agencies have not commented negatively on or objected to the entry of this Consent decree, the payment shall be made within ten (10) business days of the end of the 45-day Federal Agencies review period described in paragraph 6 above. If the Federal Agencies have commented negatively on or objected to the entry of this Consent Decree, the payment shall be made within ten (10) business days of the approval and entry of the Consent Decree by the Court. The payment shall be made via wire transfer or check, made payable to: "Orange County Coastkeeper" and delivered by certified mail or overnight delivery to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626. Any unexpended compliance monitoring funds remaining at the final termination of this Consent Decree shall be refunded to CR&R within ten (10) business days after the date of final termination.

42.   <u>Action Plan Payments</u>. If CR&R is required to submit an Advanced Treatment Action Plan, an Infiltration Action Plan, and/or an Orangewood Avenue Facility Action Plan to Coastkeeper in accordance with paragraphs 28-30, CR&R shall make payment of $5,000.00 (Five Thousand Dollars) per action plan payable to: "Orange County Coastkeeper," and delivered by wire transfer, or certified mail or overnight delivery at the time an action plan is submitted to Coastkeeper ("Action Plan Payment").

43.   <u>Reporting and Document Provision</u>. During the life of this Consent Decree, CR&R shall copy Coastkeeper on all documents related to water quality at the Facilities that are submitted to the Regional Board, the State Board, OCSD, and/or any State or local agency, county, or municipality. Such reports and documents shall be provided to Coastkeeper concurrently as they are sent to the agencies, counties, and/or municipalities. Any correspondence related to CR&R's compliance with the Storm Water Permit, OCSD Ordinance 39, or storm water and/or wastewater quality received by CR&R from any regulatory agency, State or local agency, county or municipality shall be provided to

Coastkeeper within five (5) business days of receipt by CR&R's attorney.

    **K.  Environmental Mitigation Project, Litigation Fees and Costs, Stipulated Penalties and Interest**

    44.   <u>Environmental Mitigation Project</u>. To remediate environmental harms resulting from allegations in the First Amended Complaint, CR&R agrees make a payment of $65,000.00 (Sixty-Five Thousand Dollars) to the Rose Foundation for Communities and the Environment (the "Rose Foundation") to fund environmental project activities that will benefit the Southern California Bight and its watershed. Provided that the Federal Agencies have not commented negatively on or objected to the entry of this Consent decree, the payment shall be made within ten (10) business days of the end of the 45-day Federal Agencies review period described in paragraph 6 above. If the Federal Agencies have commented negatively on or objected to the entry of this Consent Decree, the payment shall be made within ten (10) business days of the approval and entry of the Consent Decree by the Court. The payment shall be made via wire transfer or check made payable to the "Rose Foundation for Communities and the Environment" and delivered to 1970 Broadway, Suite 600, Oakland, California 94612-2218, Attn: Tim Little. CR&R shall copy Coastkeeper and its attorneys on any correspondence relating to such payment. None of the funds paid to the Rose Foundation shall be used to pay attorneys' fees.

    45.   <u>Coastkeeper's Litigation Costs</u>. To partially reimburse Coastkeeper for its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating this Consent Decree, CR&R shall pay a total of $165,000.00 (One Hundred Sixty-Five Thousand Dollars). Provided that the Federal Agencies have not commented negatively on or objected to the entry of this Consent decree, the payment shall be made within ten (10) business days of the end of the 45-day Federal Agencies review period described in paragraph 6 above. If the Federal Agencies have commented negatively on or objected to the entry of this Consent Decree, the payment shall be made within ten (10) business days

1  of the approval and entry of the Consent Decree by the Court. The payment shall be made

2  via wire transfer or check, made payable to: "Orange County Coastkeeper" and delivered

3  by certified mail or overnight delivery to: Orange County Coastkeeper, 3151 Airway

4  Avenue, Suite F-110, Costa Mesa, CA 92626.

5      46.    Stipulated Payment. In the event Coastkeeper believes that CR&R has

6  missed any deadline specified in the Consent Decree, Coastkeeper shall provide written

7  notice to CR&R of such missed deadline. CR&R shall have five (5) business days from

8  receipt of such notice to respond to Coastkeeper, and if necessary cure such delinquency.

9  If CR&R fails to respond and, if necessary, cure such alleged delinquency within five (5)

10  business days of receipt of Coastkeeper's notice, then CR&R shall make a stipulated

11  payment of $500.00 (Five Hundred Dollars) for the missed identified in Coastkeeper's

12  notice. Payments for a missed deadline shall be made for the restoration and/or

13  improvement of the watershed in the area affected by CR&R's discharges and shall be

14  made via wire transfer or check made payable to the "Rose Foundation for Communities

15  and the Environment" and delivered to 1970 Broadway, Suite 600, Oakland, California

16  94612-2218, Attn: Tim Little. CR&R agrees to make the stipulated payment within thirty

17  (30) days of a missed deadline. CR&R shall provide Coastkeeper with a copy of each

18  such payment at the time it is made.

19      47.    Interest Payments. In the event of late payment of any of the sums due under

20  this Consent Decree, CR&R shall pay ten percent (10%) APR interest to Coastkeeper,

21  which shall accrue from the first day past the date the sum was due until the date the

22  CR&R tenders payment. All such payments shall be made payable to: "Orange County

23  Coastkeeper" and delivered by wire transfer, or certified mail or overnight delivery to:

24  Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626.

25  **III.    DISPUTE RESOLUTION**

26      48.    This Court shall retain jurisdiction over this matter for the life of this

27  Consent Decree for the purposes of enforcing the terms and conditions of this Consent

28  Decree, and adjudicating all disputes among the Settling Parties that may arise under the

provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

49.     Meet and Confer. A party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying all other Settling Party in writing of the matter(s) in dispute. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute over a period of ten (10) days from the date of the notice. The Settling Parties may elect to extend this time in an effort to resolve the dispute without court intervention.

50.     If the Settling Parties cannot resolve a dispute through this meet and confer process, the Settling Parties agree to request a settlement meeting or conference before the Magistrate Judge assigned to this action. The Settling Parties agree to file any waivers necessary for the Magistrate Judge to preside over any settlement meeting or conference. In the event that the Settling Parties cannot resolve the dispute within sixty (60) days of the initial settlement meeting or conference with the Magistrate Judge, the Settling Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Settling Parties agree to request an expedited hearing schedule on the motion.

51.     If intervention by the District Court is required, civil penalties and litigation costs and fees incurred in conducting meet and confer or otherwise addressing and/or resolving any dispute, including an alleged breach of this Consent Decree, shall be awarded to the prevailing or substantially prevailing party in accordance with the standard established by Section 505 of the Clean Water Act, 33 U.S.C. §§ 1365(d) and 1319(d), and case law interpreting that standard.

## IV.   MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

52.     Coastkeeper's Release. Upon the Effective Date of this Consent Decree, Coastkeeper, on its own behalf and on behalf of its current and former officers, directors, employees, and each of their successors and assigns, and its agents, attorneys, and other representatives, hereby releases all persons including, without limitation, CR&R (and

1   each of its current and former officers, directors, members, employees, shareholders and

2   each of their predecessors, successors and assigns, and each of their agents, attorneys,

3   consultants, and other representatives) of and from, and waives all CWA claims which

4   arise from or pertain to this action, including all claims for injunctive relief, penalties,

5   fees (including fees of attorneys, experts, and others), costs, expenses or any other sum

6   incurred or claimed, and/or CWA claims asserted in, or which could have been asserted

7   in, Coastkeeper's First Amended Complaint up to the Termination Date.

8       53.    CR&R's Release. Upon the Effective Date of this Consent Decree, CR&R,

9   on its own behalf and on behalf of its current and former officers, directors, employees,

10  members, and each of their successors and assigns, and their agents, attorneys, and other

11  representatives, hereby releases Coastkeeper (and its current and former officers,

12  directors, employees, members, parents, subsidiaries, and affiliates, and each of their

13  successors and assigns, and its agents, attorneys, and other representatives) of and from,

14  and waives all claims which arise from or pertain to this action, including all claims for

15  fees (including fees of attorneys, experts, and others), costs, expenses or any other sum

16  incurred or claimed for matters related to, or which could have been asserted in response

17  to, Coastkeeper's First Amended Complaint up to the Termination Date.

18      54.    The Settling Parties acknowledge that they are familiar with Section 1542 of

19  the California Civil Code, which provides:

20      A general release does not extend to claims which the creditor does not know or
21      suspect to exist in his or her favor at the time of executing the release, which if known
        by him or her must have materially affected his or her settlement with the debtor.
22

23  The Settling Parties hereby waive and relinquish any rights or benefits they may have,

24  known or unknown, under California Civil Code Section 1542 with respect to any other

25  claims that they may have, or which could have been asserted, against each other arising

26  from, or related to, the allegations and claims as set forth in the Notice Letter, Complaint,

27  Supplemental Notice Letter, and/or the First Amended Complaint, or for any violations of

28  law at the Facilities occurring prior to the District Court's entry of its Order approving

1  this Consent Decree.

2      55.    Nothing in this Consent Decree limits or otherwise affects Coastkeeper's

3  right, while this Consent Decree remains in effect, to address or take any position that it

4  deems necessary or appropriate in any formal or informal proceeding before a regulatory

5  agency, or any other judicial or administrative body on any other matter relating to

6  CR&R's compliance with the Storm Water Permit, OCSD Ordinance 39, or the Clean

7  Water Act occurring or arising after the Effective Date of the Consent Decree. At least

8  five (5) business days prior, Coastkeeper will notify CR&R's President of the Solid

9  Waste Division (currently David E. Fahrion), either via phone or email, of Coastkeeper's

10  intention to participate and address or raise the matter of CR&R's regulatory compliance

11  in any future formal or informal proceeding before a regulatory agency, or any other

12  judicial or administrative body as described in this paragraph.

13  **V.    MISCELLANEOUS PROVISIONS**

14      56.    <u>No Admission of Liability</u>. Neither this Consent Decree, the implementation

15  of additional BMPs nor any payment pursuant to the Consent Decree shall constitute or

16  be construed as a finding, adjudication, admission or acknowledgment of any fact, law, or

17  liability, nor shall it be construed as an admission of violation of any law, rule, or

18  regulation. CR&R maintains and reserves all defenses it may have to any alleged

19  violations that may be raised in the future.

20      57.    <u>Force Majeure</u>. Force Majeure includes any act of God, war, fire,

21  earthquake, windstorm, flood or natural catastrophe; civil disturbance, vandalism,

22  sabotage or terrorism; restraint by court order or public authority or agency; or action or

23  non-action by, or inability to obtain the necessary authorizations or approvals from any

24  governmental agency. Force Majeure shall not include normal inclement weather,

25  economic hardship, or inability to pay. Any party seeking to rely upon this paragraph to

26  excuse or postpone performance shall have the burden of establishing that it could not

27  reasonably have been expected to avoid the Force Majeure event and which by exercise

28  of due diligence has been unable to overcome the failure of performance. The Settling

Parties shall exercise due diligence to resolve and remove any Force Majeure event. Delay in compliance with a specific obligation under this Consent Decree due to Force Majeure as defined in this paragraph shall not excuse or delay compliance with any or all other obligations required under this Consent Decree.

58. <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, OCSD Ordinance 39, the Clean Water Act, or specifically herein.

59. <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

60. <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

61. <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by electronic mail, overnight mail or courier as follows:

<u>If to Plaintiff:</u>

Garry Brown, Executive Director
    garry@coastkeeper.org
Colin Kelly, Staff Attorney
    colin@coastkeeper.org
3151 Airway Avenue, Suite F-110
Costa Mesa, California 92626

With copies to:
Caroline Koch
    caroline@lawyersforcleanwater.com
Lawyers for Clean Water, Inc.
1004A O'Reilly Avenue
San Francisco, California 94129

1

2     If to Defendant:

3     David W. Trotter
              DTrotter@bowlesverna.com
4     Bowles & Verna LLP
      2121 N. California Blvd., Suite 875
5     Walnut Creek, CA 94596

6     With copies to:

7     David E. Fahrion
              davidf@crrmail.com
8     President, Solid Waste Division
      CR&R Incorporated
9     11292 Western Avenue
      Stanton, CA  90680

10          Notifications of communications shall be deemed submitted the next business day

11    after having been deposited with an overnight mail/delivery service. The Settling Parties

12    may also transmit documents electronically. Electronically transmitted documents shall

13    be deemed submitted on the date of the electronic transmission. Any change of address or

14    addresses shall be communicated in the manner described above for giving notices.

15          62.    Effect of Consent Decree. Except as provided herein, Plaintiff does not, by

16    its consent to this Consent Decree, warrant or aver in any manner that CR&R's

17    compliance with this Consent Decree will constitute or result in compliance with any

18    Federal or State law or regulation. Nothing in this Consent Decree shall be construed to

19    affect or limit in any way the obligation of CR&R to comply with all Federal, State, and

20    local laws and regulations governing any activity required by this Consent Decree.

21          63.    Counterparts. This Consent Decree may be executed in any number of

22    counterparts, all of which together shall constitute one original document. Telecopy,

23    email of a .pdf signature, and/or facsimile copies of original signature shall be deemed to

24    be originally executed counterparts of this Consent Decree.

25          64.    Modification of the Consent Decree. This Consent Decree, and any

26    provisions herein, may not be changed, waived, discharged, or terminated unless by a

27    written instrument, signed by the Settling Parties.

28

65.     <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

66.     <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

67.     <u>Authority</u>. The undersigned representatives for Plaintiff and CR&R each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

68.     The provisions of this Consent Decree apply to and bind the Settling Parties, including any successors or assigns. The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

69.     The Settling Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms. By entering into this Consent Decree, CR&R does not admit liability for any purpose as to any allegation or matter arising out of the Notice Letter, Complaint, Supplemental Notice Letter, and First Amended Complaint.

**IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated:  *March 27*, 2015          By: _____
                                   Garry Brown
                                   Orange County Coastkeeper

1    Dated: _____, 2015          By: _____

2                                         David E. Fahrion

3                                         President, Solid Waste Division
                                          CR&R Incorporated
4

5    APPROVED AS TO FORM

6                                         LAWYERS FOR CLEAN WATER, INC.

7

8    Dated: March 27, 2015                By: _Caroline Koch_____

9                                         Daniel Cooper
                                          Caroline Koch
10                                        Attorney for Plaintiff

11                                        BOWLES & VERNA LLP

12

13

14   Dated: _____, 2015          By: _____

15                                        David W. Trotter
                                          Attorney for Defendant
16

17
     **IT IS SO ORDERED.**                UNITED STATES DISTRICT COURT
18                                        CENTRAL DISTRICT OF CALIFORNIA

19

20   Date: ___May 19_____, 2015          _____

21                                        Honorable Cormac J. Carney

22

23

24

25

26

27

28

---

[Proposed] Consent Decree          36          Civil Case No. 8:14-cv-01133-CJC-ANx

1    Dated:    March 30 , 2015          By: _____

2                                       David E. Fahrion

3                                       President, Solid Waste Division
                                        CR&R Incorporated
4

5    APPROVED AS TO FORM

6                                       LAWYERS FOR CLEAN WATER, INC.

7    Dated: March 27, 2015              By: _____

8                                       Daniel Cooper
                                        Caroline Koch
9                                       Attorney for Plaintiff

10

11                                      BOWLES & VERNA LLP

12

13   Dated:    MARCH 31 , 2015          By: _____

14                                      David W. Trotter

15                                      Attorney for Defendant

16

17   **IT IS SO ORDERED.**             UNITED STATES DISTRICT COURT
                                       CENTRAL DISTRICT OF CALIFORNIA
18

19   Date: ___May 19___ , 2015         _____

20                                      Honorable Cormac J. Carney

21

22

23

24

25

26

27

28

---

[Proposed] Consent Decree          36          Civil Case No. 8:14-cv-01133-CJC-ANx

**Exhibit 1**



**Exhibit 2**



SOUTHERN CALIFORNIA EDISON LICENSE AREA
UNPAVED (PERVIOUS)
USED FOR CONTAINER STORAGE

**Exhibit 3**



**PROPOSAL**

February 3, 2015

Mr. David E. Fahrion
CR&R Inc.
11292 Western Avenue
Stanton, CA 90680-2912

**Subject: CR&R, 11292 Western Avenue, Stanton, CA 90680-2912**

Dear David,
Per your request, the following is our proposal and scope of work for Arco Design Canopies.

**Canopy Structure**
    **DESCRIPTION:**    **One Canopy 24' 0" X 34' 0", 16' High, 2 Columns Standard Design.**

**WORK EXCLUDED:** Permits, permit expediting, and permit and plan check fees, column shrouds, electrical, painting, decals, spandrels, signage, site painting, footings, and site prep. All site electrical and underground drainage, field connection are also excluded.

**STRUCTURAL PERMIT DRAWINGS:** Furnish 3 Sets of structural drawings Stamped and Signed by California Licensed Engineer.
**STRUCTURAL:** Standard construction. All structural shapes to be ASTM A-992 prime coated with modified alkyd primer (for temporary rust protection only and is not a finish paint). All Structural steel to be wire brushed free of any rust, mill scale or other contamination. Tubular Steel to be ASTM A-500 prime coated (as above).
**FASCIA FRAMING:** Per Structural Drawings.
**FASCIA:** White ACM Fascia Panels 30".
**SOFFIT, GUTTER & GUTTER COVER:** Pre-finished white sheet metal.
**DECK:** Deck pans to be 3" x 16", 20 Gage white polyester finish.
**ELECTRICAL:** Not included, Two Conduits inside columns included.
**DRAINAGE:** Canopy is drained with ABS downspouts located inside the columns.

**GENERAL:** Canopy site to be level with a compacted surface suitable for installation of gutter, soffit, fascia framing, and fascia panels system. Open pits, trenches, mounds, or excessive mud within 10' of canopy perimeter are considered unacceptable conditions.

**Total 24' X 34', 2 Column Canopy PRICE: $23,524.00** Tax Included

**Option:** Furnish and Install LSI Crossover, 128 LED Lights, ......................................................$550.00/ea. Tax Included Accept _____

**TERMS:** $2,000.00 to Commence Permit Drawings, 40% down payment upon fabrication, 50% upon Delivery and Start of Erection, 10% Upon Completion.

Sincerely;

M. Mike Audish

**Accepted and agreed** By: _____ **Date:** _____